UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHIL GORDON, on behalf of himself and
others similarly situated,

                Plaintiff,

    v.

                22-CV-02138 (JMF)(VF)

BLUETRITON BRANDS, INC. (f/k/a NESTLE :
WATERS NORTH AMERICA, INC.),

                Defendant.

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

D. Maimon Kirschenbaum
Josef Nussbaum
**JOSEPH & KIRSCHENBAUM LLP**
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiff and proposed F.R.C.P. Rule 23 Class Members*

May 27, 2022

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ................................................................................................ 1

II.  BACKGROUND ................................................................................................................. 2

III. ARGUMENT ...................................................................................................................... 4

    A.  There Is A Private Right Of Action For N.Y. Lab. L. § 191 Claims Based On The
    Untimely Payment Of Wages ....................................................................................... 4

        i.  Vega is a well-reasoned decision and it will not be overturned ..................................... 4

        ii. There is a unanimous chorus of opinions that Vega was correctly decided and will be
        upheld ................................................................................................................................ 5

    B.  Vega is Clear that Violations of NYLL § 191 are Subject to Liquidated Damages ........... 9

    C.  The Complaint Adequately Alleges Standing ................................................................... 12

        i.  Plaintiff has standing to pursue N.Y. Lab. L. § 191 claims for the late payment of
        wages .................................................................................................................................. 13

        ii. Even if a plaintiff must allege more than just a late payment of wages to establish
        standing, the Complaint satisfies that standard ............................................................. 17

    D.  The Definition of "Wages" under Article 6 of the Labor Law Includes Salaries ............. 18

IV.  CONCLUSION ..................................................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Almon v. Conduent Bus. Servs., LLC*, No. 19 CV 1075, 2022 U.S. Dist. LEXIS 55025
(W.D. Tex. Mar. 25, 2022) ......................................................................................... 16

*Avelar v. Ed Quiros, Inc.*, No. CV 13-7017(ADS)(GRB), 2015 U.S. Dist. LEXIS 33745
(E.D.N.Y. Feb. 26, 2015)............................................................................................ 20

*Beh v. Cmty. Care Companions Inc.*, No. 19-CV-1417, 2021 U.S. Dist. LEXIS 197316
(W.D.N.Y. Feb. 1, 2021) .............................................................................................. 6

*Brito v. Marina's Bakery Corp.*, No. 19-CV-00828(KAM)(MMH), 2022 U.S. Dist. LEXIS 53351
(E.D.N.Y. Mar. 24, 2022) .......................................................................................... 12

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) ........................................................ 5, 11 ,14

*Calderon v. Witvoet*, 999 F.2d 1101 (7th Cir. 1993) ................................................... 14

*Carrera v. Dt Hosp. Grp.*, No. 19-CV-4235 (RA) (KHP), 2021 U.S. Dist. LEXIS 210894
(S.D.N.Y. Nov. 1, 2021) ......................................................................................... 6, 12

*Caul v. Petco Animal Supplies, Inc.*, No. 1:20-cv-03534-RPK-SJB, 2021 U.S. Dist. LEXIS
253174 (E.D.N.Y. Dec. 22, 2021) .............................................................................. 14

*Caul v. Petco Animal Supplies, Inc.*, No. 20 CV 3534, 2021 U.S. Dist. LEXIS 184652, (E.D.N.Y.
Sept. 27, 2021) ....................................................................................................... 5, 10

*Corrales v. AJMM Trucking Corp.*, No. 19-cv-4532 (LJL), 2020 U.S. Dist. LEXIS 69417
(S.D.N.Y. Apr. 20, 2020)............................................................................................ 21

*Danusiar v. Auditchain USA, Inc.*, No. 20-CV-1477 (KNF), 2020 U.S. Dist. LEXIS 186941
(S.D.N.Y. Oct. 8, 2020) .............................................................................................. 21

*DiBella v. Hopkins*, 403 F.3d 102 (2d Cir. 2005) .......................................................... 5

*Duverny v. Hercules Medical P.C.,* No. 18cv07652 (DLC), 2020 U.S. Dist. LEXIS 37547
(S.D.N.Y. Mar. 3, 2020) .............................................................................................. 6

*Elhassa v. Hallmark Aviation Servs., L.P.*, No. 21-cv-9768 (LJL), 2022 U.S. Dist. LEXIS 33051
(S.D.N.Y. Feb. 24, 2022)............................................................................................. 8

*Falk v. FFF Indust., Inc.*, 731 F. Supp. 134 (S.D.N.Y. 1990).................................... 20

*Ga Ho Kim v. DK Cosmetics*, No. 19-CV-9079 (JMF), 2022 U.S. Dist. LEXIS 32972
(S.D.N.Y. Feb. 23, 2022) ............................................................................................ 21

*Garcia v. Giorgio's Brick Oven & Wine Bar*, No. 11 Civ. 4689 (LLS) (FM), 2012 U.S. Dist.
LEXIS 118393 (S.D.N.Y. Aug. 15, 2012) ..................................................................... 19

*Gonzalez v. Gan Israel Preschool*, 2014 U.S. Dist. LEXIS 34633 (E.D.N.Y. Feb. 5, 2014)....... 12

*Gottlieb v. Kenneth D. Laub & Co.*, 82 NY2d 457, 626 N.E.2d 29, 605 N.Y.S.2d 213
(NY 1993) ...................................................................................................................... 4

*Habitat Educ. Center v. U.S. Forest Serv.*, 607 F.3d 453 (7th Cir. 2010) .................................... 18

*Ho v. Target Constr. of NY, Corp.*, No. 08-CV-4750(KAM)(RER), 2011 U.S. Dist. LEXIS
33365 (E.D.N.Y. Mar. 28, 2011) ................................................................................... 12

*Hunt v. Interactive Med. Specialists, Inc.*, No. 19 CV 13, 2019 U.S. Dist. LEXIS 208561
(N.D.W.V. Dec. 4, 2019) ............................................................................................... 14

*In re Murel Holding Corp.*, 75 F.2d 941 (2d Cir. 1935) ............................................................ 18

*Jian Zhong Chen v. JP Standard Constr. Corp.*, No. 14-CV-1086 (MKB), 2016 U.S. Dist.
LEXIS 36464 (E.D.N.Y. Mar. 18, 2016) ....................................................................... 12

*Katz v. Equinox Holdings, Inc.*, No. 20-CV-9856 (VEC), 2022 U.S. Dist. LEXIS 78299
(S.D.N.Y. Apr. 29, 2022) ............................................................................................... 6

*Konkur v. Utica Academy of Sci. Charter Sch.*, No. 8, 2022 N.Y. LEXIS 70
(Feb. 10, 2022) ....................................................................................................... 7, 8, 9

*Mabe v. Wal-Mart Assocs.*, No. 20 CV 591, 2022 U.S. Dist. LEXIS 53492
(N.D.N.Y. Mar. 24, 2022) .............................................................................................. 6

*Maddox v. Bank of N.Y. Mellon Trust Co., N.A.*, 19 F.4th 58 (2d Cir. 2021) .............................. 12

*Marvin Williams v. Miracle Mile Properties 2 LLC*, No. 20-CV-3127, 2022 U.S. Dist. LEXIS
19826 (E.D.N.Y. Feb. 1, 2022) ...................................................................................... 6

*McRobie v. Palisades Acquisition XVI, LLC*, No. 15 CV 18, 2022 U.S. Dist. LEXIS 38778
(W.D.N.Y. Mar. 4, 2022) ............................................................................................... 15

*MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312 (11th Cir. 2019) ................................ 16

*Neri v. Abi Japanese Rest.*, No. 20-CV-581 (MKB), 2021 U.S. Dist. LEXIS 252853
(E.D.N.Y. Nov. 24, 2021) ............................................................................................... 21

*Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 62 S. Ct. 1216, 86 L. Ed. 1682 (1942) .. 14

*Pachter v. Bernard Hodes Grp., Inc.*, 2008 NY Slip Op 5300, ¶ 5, 10 N.Y.3d 609, 861 N.Y.S.2d 246, 891 N.E.2d 279 ......................................................................................................... 18

*Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418 (S.D.N.Y. 2019) ........................................................ 17

*Quintanilla v. Kabco Pharmaceuticals*, 19 Civ. 6752 (PKC)(CLP)............................................. 6

*Rana v Islam*, 887 F3d 118(2d Cir. 2018) ................................................................................. 11

*Ribbler v. Chicksation Inc.*, 2018 NY Slip Op 31814(U), ¶ 11 (Sup. Ct.) .................................. 21

*Rigopoulos v. Kervan*, 140 F.2d 506 (2d Cir. 1943)................................................................... 13

*Rogers v. City of Troy*, 148 F.3d 52 (2d Cir. 1998) ................................................................... 14

*Ryan v. Kellogg Partners Institutional Servs.*, 2012 NY Slip Op 2248, ¶ 11, 19 N.Y.3d 1, 945 N.Y.S.2d 593, 968 N.E.2d 947 .............................................................................................. 20

*Scott v. Whole Foods Mkt. Grp., Inc.*, No. 18-CV-0086 (SJF) (AKT), 2020 U.S. Dist. LEXIS 255455 (E.D.N.Y. Feb. 5, 2020)............................................................................................. 6

*Sorto v. Diversified Maint. Sys., LLC*, No. 20-CV-1302, 2020 U.S. Dist. LEXIS 242856 (E.D.N.Y. Dec. 28, 2020) ....................................................................................................... 6

*Stephens v. U.S. Airways Group*, 644 F.3d 437, 442 (D.C.C. 2011) ............................................ 2

*Thompson v. Jennings & Hartwell Fuel Oil Corp.*, No. 14 CV 1857 (RJD)(LB), 2015 U.S. Dist. LEXIS 123061 (E.D.N.Y. Aug. 27, 2015)................................................................................ 12

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ......................................................... 13, 15

*Truelove v. Ne. Capital & Advisory, Inc.*, 95 N.Y.2d 220, 224, 715 N.Y.S.2d 366, 738 N.E.2d 770 (2000)............................................................................................................................ 19

*Tulino v. City of N.Y.*, No. 15-CV-7106 (JMF), 2018 U.S. Dist. LEXIS 51391 (S.D.N.Y. Mar. 27, 2018) ............................................................................................................................. 22

*Van v. LLR, Inc.*, 962 F.3d 1160, 1161 (9th Cir. 2020) ............................................................. 16

*Vega v. CM & Assoc. Construction Mgt., LLC*, 175 A.D.3d 114 (N.Y. App. Div. 1st Dep't 2019) ...................................................................................... passim

*Wachter v. Kim*, 2011 NY Slip Op 2526, ¶¶ 4-5, 82 A.D.3d 658, 920 N.Y.S.2d 66 (App. Div. 1st Dept.)........................................................................................................... 21

c

**Statutes**

N.Y. Lab. L. § 190 (1) ................................................................................................ passim

N.Y. Lab. L. § 191 ...................................................................................................... passim

N.Y. Lab. Law § 193 ........................................................................................................ 20

N.Y. Lab. L. § 198 ...................................................................................................... passim

N.Y. Lab. Law § 194 ........................................................................................................ 22

N.Y. Lab. Law § 195 ........................................................................................................ 21

Plaintiff Phil Gordon ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendant BlueTriton Brands, Inc.'s (hereinafter "BTB" or "Defendant") motion to dismiss Plaintiff's Complaint.[1]

## I.    PRELIMINARY STATEMENT

Plaintiff alleges that while employed by Defendant, he was a manual worker entitled to be paid weekly under N.Y. Lab. L. § 191(1)(a).  However, Defendant paid him and similarly situated employees biweekly, in violation of that provision.  Thus, every other workweek Defendant deprived Plaintiff of money that belonged to him and, under N.Y. Lab. L. § 198, he and his similarly situated coworkers are entitled to liquidated damages for the late payments.

In their motion, Defendant spins a web of half-stories and misrepresentations while failing to be candid with the Court about obviously relevant caselaw.  In so doing, Defendant would have this Court accept four completely unfounded opinions, namely: (1) that Plaintiff does not have Article III standing because Plaintiff has not alleged that he suffered a concrete loss (he obviously has as he claims he was paid late every other week); (2) that there is no express or implied private right of action for violations of § 191 (but all the caselaw states precisely the opposite); (3) that liquidated damages are not available for violations of § 191 (but every case to have considered this issue has awarded them); and (4) that the term "wages" in Article 6 of the Labor Law—which includes § 191—does not cover employees paid on a weekly salary (but the definition of that term in Article 6 plainly includes earnings determined on (a) any "time"—not just hourly—basis,  and (b) on "any other" basis, and the term "wages" has consistently been applied to cases involving all kinds of earnings, including salaries, bonuses, commissions, etc.).  As outlined below, not one of these positions is even a close call and the Court should deny Defendant's motion.

---

[1]  With this memorandum of law, Plaintiff submits the May 27, 2022 declaration of Josef Nussbaum ("Nussbaum Decl.") and exhibits thereto ("Ex. [NUMBER]").

In terms of standing, because "[m]oney later is not the same as money now," *Stephens v. U.S. Airways Group*, 644 F.3d 437, 442 (D.C.C. 2011) (Kavanaugh, J., concurring), Plaintiff has pled a quintessential monetary harm that establishes Article III standing.  Moreover, contrary to Defendant's misrepresentations, Plaintiff has spelled out in his complaint that he lost the ability to use his money in the time that he was not timely paid.

It is also well-settled that there is a private right of action for violations of N.Y. Lab. L. § 191(1)(a) when wages have been paid late but in full. *Vega v. CM & Assoc. Construction Mgt., LLC*, 175 A.D.3d 114 (N.Y. App. Div. 1st Dep't 2019), held that there is an express private right of action for such claims, and *Vega* is controlling.  Indeed, every Court in this Circuit (at least ten) that has considered *Vega* has followed that decision.  (Defendant inexplicably does not cite to even one of them.)  *Vega* also makes clear that violations of § 191 are subject to liquidated damages even if an employer pays the wages owed prior to commencement of the action.

Most egregiously, Defendant's claim that the definition of "wages" in Article 6 of the Labor Law is limited to hourly wage earners and is not available to salary earners such as Plaintiff and the putative class members simply makes up new "law" out of thin air.  Defendant would have this Court blindly ignore the fact that the definitions section of Article 6 of the Labor Law tells us what earnings are considered "wages" (*all* earnings are considered wages), and that courts interpreting Article 6 have consistently applied its provisions to all kinds of earnings, including salaries.  Under these circumstances, Defendant's motion to dismiss should be denied.

## II.    BACKGROUND

Plaintiff was employed by Defendant as a beverage delivery driver from approximately September 2018 until June 2021. Dkt. No. 10 ¶¶ 9-10.  From approximately September 2018 until June 2020, Plaintiff was employed by Defendant as a delivery driver called a "ReadyRefresh

Service Representative" ("RSR").  From June 2020 until he ceased working for BTB in June 2021, Plaintiff worked as a "Delivery Service Driver" ("DSD"). *Id*.  Plaintiff and his coworkers employed in RSR and DSD positions at BTB were responsible for delivering the Company's products to its retail customers. *Id*. ¶¶ 36-39.)  Specifically, RSRs and DSDs were essentially tasked with driving trucks filled with BTB's merchandise to customers' locations, unloading the merchandise from the trucks, and physically delivering the merchandise to the customers. *Id*. ¶ 40.

Plaintiff commenced this action on March 15, 2022 (Dkt. No. 1) and filed a revised complaint ("Complaint") on March 23, 2022. Dkt. No. 10.[3]  In the Complaint, Plaintiff alleges that he was a "manual worker" under the New York Labor Law ("NYLL").  N.Y. Lab. L. § 190(4). Complaint ¶¶ 1, 37-49.  N.Y. Lab. L. § 191(1)(a) requires most employers to pay manual workers on a weekly basis. When an employer fails to pay manual workers on a weekly basis, it is underpaying those employees, even if it later pays them the wages that they are owed.  As the First Department has explained in the leading case on this issue: "The moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required." *Vega*, 175 at 1145.  Accordingly, a manual worker who has not been paid on a weekly basis may bring a claim under N.Y. Lab. L. § 191(1)(a) and recover liquidated damages for late-paid wages. *Id*. at 1145-46.  In this case, Plaintiff alleges that Defendant paid him and members of the putative subclasses comprised of other manual workers employed in New York (RSRs and DSDs) on a biweekly – rather than weekly – basis, in violation of N.Y. Lab. L. § 191(1)(a).  Complaint ¶¶ 4, 49-53.  Thus, Plaintiff seeks to recover, on behalf of himself and the putative subclasses, liquidated damages equal to the amount of the untimely paid wages, as provided by N.Y. Lab. L. § 198.  on May 9, 2022, Defendant filed the instant motion to dismiss. Dkt. No. 19.

---

[3]  The revised Complaint did not amend the original complaint that was filed but merely redacted Plaintiff's contact information.

III.     ARGUMENT

A.     **There Is A Private Right Of Action For N.Y. Lab. L. § 191 Claims Based On The Untimely Payment Of Wages**

i.     *Vega* **is a well-reasoned decision and it will not be overturned**

The law is clear that there is a private right of action for N.Y. Lab. L. § 191 claims seeking liquidated damages for the untimely payment of wages. The leading case on the issue is *Vega*, 175 A.D.3d 1144, which held that N.Y. Lab. L. § 198(1-a) *expressly* established a private right of action for such claims. *Id*. at 1146. N.Y. Lab. L. § 198(1-a) provides a private right of action for "wage claims based upon violations of one or more of the substantive provisions of Labor Law article 6," *id*. at 1145 (internal quotation marks omitted), and mandates an award of liquidated damages equal to the amount of the underpaid wages unless the employer establishes the affirmative defense that "a good faith basis to believe that its underpayment of wages was in compliance with the law[.]" N.Y. Lab. L. § 198(1-a). The *Vega* court held that an employee suffers an "underpayment" "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a)[.]" *Vega*, 175 A.D.3d at 1145. Thus, N.Y. Lab. L. § 198(1-a) explicitly establishes a private right of action for N.Y. Lab. L. § 191 claims. *Id*. at 1146.

Notably, the Court found:

> The purpose of section 198 (1-a) is "enhancing enforcement of the Labor Law's substantive wage enforcement provisions" […], and contrary to defendant's argument that section 198 provides remedies only in the event of nonpayment or partial payment of wages (but not in the event of late payment of wages), the plain language of the statute indicates that individuals may bring suit for any "wage claim" against an employer. The remedies provided by section 198 (1-a) apply to "violations of article 6" and section 191(1)(a) is a part of article 6.

*Id*. (citing *Gottlieb v. Kenneth D. Laub & Co*., 82 NY2d 457, 459, 626 N.E.2d 29, 605 N.Y.S.2d 213 (NY 1993))(emphasis added). The *Vega* Court held that underpayment as used in § 198(1-a) "encompasses the instances where an employer violates the frequency requirements of section

191(1)(a) but pays all wages due before the commencement of an action." *Vega*, 175 A.D.3d at 1145. The Court found that the word "underpayment," deriving from the verb "underpay," means to "pay less than what is normal or required." *Id.* (citing Merriam-Webster's Dictionary).

Significantly, the *Vega* Court held that "Labor Law § 198 (1-a) *expressly* provides a private right of action for a violation of Labor Law § 191," finding that "Defendant's position that no private right of action exists is dependent on its erroneous assertion that the late payment of wages is not an underpayment of wages." *Id.* at 1146 (emphasis added); *see also, e.g., Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) ("failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers and to the free flow of commerce.").

### ii.   There is a unanimous chorus of opinions that *Vega* was correctly decided and will be upheld

*Vega* is the only decision regarding the existence of a private right of action for N.Y. Lab. L. § 191 claims that has been issued by any department of the New York Appellate Division. The New York Court of Appeals has not rendered a decision on this issue. Therefore, this Court is bound to follow *Vega* "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005). In their brief, Defendant insists that not only does such persuasive data exists here but that "there is no doubt" that New York Court of Appeals will find there is private right of action for violations of NYLL § 191. Defs.' Mem. at 12. Nothing could be further from the reality.

In making this wild and unfounded assertion, Defendant simply ignores the fact that "*every court in this Circuit to consider* [*Vega*] appears to have followed its construction of the New York Labor Law." *Caul v. Petco Animal Supplies, Inc.*, No. 20 CV 3534, 2021 U.S. Dist. LEXIS 184652, at *6-7 (E.D.N.Y. Sept. 27, 2021) (collecting cases) (emphasis added). In fact, since *Vega* was

decided less than three years ago, at least *ten* district courts have accepted its decision as controlling and persuasive.[4] *See Katz v. Equinox Holdings, Inc*., No. 20-CV-9856 (VEC), 2022 U.S. Dist. LEXIS 78299, at *12-13 (S.D.N.Y. Apr. 29, 2022) ("federal courts have consistently held that there is a private right of action under § 191(1)(a) pursuant to the First Department's finding in *Vega*").  Bizarrely, Defendant does not cite even one of these decisions and would instead have this Court ignore the settled state of the law.

Defendant's lack of candor on this issue is telling.  Numerous federal courts that analyzed *Vega* noted that, in the absence of any contrary New York authority or other persuasive data establishing that the highest court of the state would decide otherwise, the state intermediate court decisions control, and they have all, without exception, followed *Vega*.  In other words, the federal courts looked to whether there was persuasive data that the Court of Appeals would overturn *Vega*, and have unanimously found that none existed. "Thus, the case authority directly addressing [the N.Y. Lab. L. § 191 claim] is not unsettled, and therefore there appears to be no apparent reason to determine how the New York State Court of Appeals would decide the issues addressed in *Vega*." *Mabe*, 2022 U.S. Dist. LEXIS 53492, at *9-10.  Zealous advocacy aside, Defendant—who fails to cite even one of the many decisions following *Vega* and thus fail to explain in what way those

---

[4]  *See Mabe v. Wal-Mart Assocs.*, No. 20 CV 591, 2022 U.S. Dist. LEXIS 53492, at *9 (N.D.N.Y. Mar. 24, 2022); *Beh v. Cmty. Care Companions Inc.*, No. 19-CV-1417, 2021 U.S. Dist. LEXIS 197316 (W.D.N.Y. Feb. 1, 2021), *report and recommendation adopted*, No. 19-CV-1417, 2021 U.S. Dist. LEXIS 130723 (W.D.N.Y. June 23, 2021); *Marvin Williams v. Miracle Mile Properties 2 LLC*, No. 20-CV-3127, 2022 U.S. Dist. LEXIS 19826 (E.D.N.Y. Feb. 1, 2022); *Sorto v. Diversified Maint. Sys., LLC*, No. 20-CV-1302, 2020 U.S. Dist. LEXIS 242856 (E.D.N.Y. Dec. 28, 2020); *Duverny v. Hercules Medical P.C.,* No. 18cv07652 (DLC), 2020 U.S. Dist. LEXIS 37547 (S.D.N.Y. Mar. 3, 2020); *Scott v. Whole Foods Mkt. Grp., Inc.,* No. 18-CV-0086 (SJF) (AKT), 2020 U.S. Dist. LEXIS 255455 (E.D.N.Y. Feb. 5, 2020); *Katz v. Equinox Holdings, Inc*., No. 20-CV-9856 (VEC), 2022 U.S. Dist. LEXIS 78299, at *12-13 (S.D.N.Y. Apr. 29, 2022); *Carrera v. Dt Hosp. Grp*., No. 19-CV-4235 (RA) (KHP), 2021 U.S. Dist. LEXIS 210894, at *27-28 (S.D.N.Y. Nov. 1, 2021), report and recommendation adopted, No. 19-CV-4235 (RA) (KHP), 2021 U.S. Dist. LEXIS 234230 (S.D.N.Y. Dec. 7, 2021);  *Quintanilla v. Kabco Pharmaceuticals*, 19 Civ. 6752 (PKC)(CLP), Doc. No. 18 (Apr. 17, 2020 Oral Argument Trans.) (E.D.N.Y.)(Attached as Ex. A to the Nussbaum Decl.) (Judge Chen indicated that she was revisiting and not following her decision in *Coley* "in light of the *Vega* decision," and denied defendants' motion to dismiss the plaintiff's NYLL § 191 frequency payment claim).

decisions were incorrectly decided—cannot in any sane-minded manner expect this Court to believe that "there is no doubt" that New York Court of Appeals will overturn *Vega*. *See e.g.*, *Sorto*, 2020 US Dist. LEXIS 242856, at *6 ("the Court finds *Vega* persuasive and sees no reason to depart from its analysis"); *Katz*, 2022 U.S. Dist. LEXIS 78299, at *12-13 ("The § 191 (1)(a) claim does not present a novel and complex question of state law . . . ").

The New York Court of Appeal's decision in *Konkur v. Utica Academy of Sci. Charter Sch.*, No. 8, 2022 N.Y. LEXIS 70 (Feb. 10, 2022), does not support Defendant's contention that there is no private right of action for N.Y. Lab. L. § 191(1)(a) claims based on the late payment of wages. *See generally*, *Mabe*, 2022 U.S. Dist. LEXIS 534932, at *10-20 (rejecting argument that *Konkur* indicates that the Court of Appeals would reverse *Vega*). In *Konkur*, the Court of Appeals considered whether there is a private right of action for violations of N.Y. Lab. L. § 198-b, which prohibits kickbacks of wages. After noting that there is no express private right of action for N.Y. Lab. L. § 198-b claims, the Court evaluated the factors relevant to the existence of an implied private right of action and concluded that there was no implied private right of action for N.Y. Lab. L. § 198-b claims. *Id*. at *3-8.

The holding of *Konkur* in no way suggests that the Court of Appeals would disagree with *Vega*'s holding that there is a private right of action for N.Y. Lab. L. § 191(1)(a) claims. First and foremost, while there is no express private right of action for N.Y. Lab. L. § 198-b claims, the statute in issue in *Konkur*, as discussed above *Vega* held that there *is* an express private right of action for N.Y. Lab. L. § 191(1)(a) claims. Nothing in *Konkur* casts doubt on this holding. *Vega*'s holding that there is an express private right of action was based on its conclusion that late-paid wages are underpaid wages. Because N.Y. Lab. L. § 198(1-a) expressly grants a private right of

action for claims for underpaid wages, there is an express private right of action for N.Y. Lab. L.

§ 191(1)(a) violations.  As Judge McAvoy recently noted:

> On its face, *Konkur* does not stand for the propositions that the late payment of wages is not the underpayment of wages, or that the late payment of wages is not a wage claim privately actionable under Section 198(1-a).  Thus, *Konkur* does not directly contradict the *Vega* Court's determination that the late payment of wages is an underpayment of wages[.]"

*Mabe*, 2022 U.S. Dist. LEXIS 53492, at *17.  Similarly, Judge Liman commented:

> Defendant argues that [*Konkur*] calls the decision of *Vega* and decisions of the courts that have followed it into question. But, as Defendant admits [] the question in *Konkur* had to do with the implication of a private right of action for a different provision of the NYLL. *Vega* rested on a different ground. *Vega* did not hold that a private right of action was implied for the late payment of wages. It concluded that the NYLL "expressly provides a private right of action for [the late payment of wages]. Defendant's position that no private right of action exists is dependent on its erroneous assertion that the late payment of wages is not an underpayment of wages.

*Elhassa v. Hallmark Aviation Servs., L.P.*, No. 21-cv-9768 (LJL), 2022 U.S. Dist. LEXIS 33051,

at *7 (S.D.N.Y. Feb. 24, 2022).

To be sure, in *Vega*, after holding that there is an express private right of action for N.Y.

Lab. L. § 191(1)(a) claims, the First Department found that even if there were no express private

right of action there would be an implied private right of action because the plaintiff was "one of

the class for whose particular benefit the statute was enacted, the recognition of a private right of

action would promote the legislative purpose of that statute, and the creation of such a right would

be consistent with the legislative scheme." *Vega*, 175 A.D.3d at 1146.  Specifically, because N.Y.

Lab. L. § 198 permits private civil actions when the Commissioner of Labor declines to take action,

a private right of action for N.Y. Lab. L. § 191 violations is "consistent with the legislative

scheme[.]" *Id*. at 1147.  Based on this, a court in this Circuit recently found that *Konkur* did not

suggest that the New York Court of Appeals would reach a different conclusion than *Vega*

regarding an implied private right of action for N.Y. Lab. L. § 191 claims. *Mabe*, 2022 U.S. Dist. LEXIS 53492, at \*19-20.

If anything, *Konkur* actually supports *Plaintiff's* position and strengthens the holding of *Vega*. In *Konkur*, the Court of Appeals stated that "the attorney's fees remedy provided for in section 198(1-a) must relate to 'wage claims based upon violations of one or more of the substantive provisions of Labor Law article 6. And it is Labor Law § 191 that 'generally regulates payment of wages by employers and creates reciprocal rights of employees." *Konkur*, 2022 N.Y. LEXIS 70 at \*3 (internal citations omitted). In other words, N.Y. Lab. L. § 198(1-a) provides a private right of action for N.Y. Lab. L. § 191 claims. For the foregoing reasons, there is a private right of action for N.Y. Lab. L. § 191 claims.

In sum, *Vega* is settled law and there is no data at all, let alone "persuasive data," that indicates the Court of Appeals would alter that decision.

## B.    *Vega* Is Clear That Violations Of NYLL § 191 Are Subject To Liquidated Damages

Defendant's assertion that liquidated damages are not available for § 191 once again contradicts the holding in *Vega* and, at its core, it simply a rehashing of Defendant's (incorrect) belief that a late payment of wages is not considered an underpayment for the purposes of § 191. In fact, contrary to Defendant's statements, the *Vega* Court itself unambiguously explained that liquidated damages are to be applied in late payment of wages cases even if an employer later makes a full payment of wages.

In making the obviously incorrect assertion that liquidated damages are unavailable for § 191 violations, Defendant once again shamelessly fails to tell the whole story. Specifically, in *Vega*, the Court *explicitly* rejected the "defendant's implicit attempt to read into section 198(1-a) an ability to cure a violation and evade the statute by paying the wages that are due before the

9

commencement of an action." *Vega*, 175 A.D.3d at 1145.  The Court indicated that an employer "may assert an affirmative defense of payment if there are no wages for the 'employee to recover' (Labor Law § 198 [1-a])," but that "payment does not eviscerate the employee's statutory remedies." *Id*.  In other words, a defendant, like BTB here, can assert an affirmative defense to its late payment of wages and thereby avoid having to pay those wages again by simply paying the underpaid *principal* wages that were owing.  However, repaying the principal wages does not help the employer to escape liability for liquidated damages that arises immediately once the wages are paid late.  *See Vega*, 175 A.D.3d at 1145 (an employee suffers an "underpayment" "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a)[.]").

Not surprisingly, and as with the private right of action issue, federal courts that have considered how damages are calculated under § 191 have decidedly applied the holding in *Vega*. *See, e.g., Caul*, 2021 U.S. Dist. LEXIS 184652, at *5-6 ("Here, a state intermediate court—the Appellate Division's First Department—has held that New York Labor Law permits employees to seek liquidated damages for the untimely payment of wages, even if wages are no longer past due."); *Duverny*, 2020 U.S. Dist. LEXIS 37547, at *13 ("A plaintiff's entitlement to statutory damages pursuant to § 198(1-a) survives even if the employer pays the employee's base wages prior to the commencement of a civil action."); *Williams*, 2022 U.S. Dist. LEXIS 19826, at *28-29 (§ 198(1-a) "has been interpreted by courts in the district to allow plaintiffs to pursue a claim to recover the underpayment as liquidated damages") (collecting cases).

The *Vega* court analogized the liquidated damages provision of the NYLL to the same laws under the Fair Labor Standards Act ("FLSA").  With regard to the latter, the *Vega* Court noted that the Supreme Court "has held that, regardless of whether an employee has been paid wages owed before the commencement of the action, the statute provides a liquidated damages remedy for the

'failure to pay the statutory minimum on time,' in order to provide 'compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages.'" *Id*. as 1145-46 (quoting *Brooklyn Sav.*, 324 U.S. at 707).  The Court found that "Labor Law § 198 (1-a), although not identical to the FLSA liquidated damages provision (29 U.S.C. § 216[b]), has 'no meaningful differences, and both are designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed.'" *Id*. at 1146 (quoting *Rana v Islam*, 887 F3d 118, 123 (2d Cir. 2018)(internal quotation marks omitted). Accordingly, the Court found that "liquidated damages may be available under Labor Law § 198 (1-a) to provide a remedy to workers complaining of untimely payment of wages, as well as nonpayment or partial payment of wages." *Id*.  In a footnote, the Court further supported its position that liquidated damages apply here as:

> The legislative history of the 1967 amendment to section 198 reflects that in addition to imposing "stronger sanctions" to compel employer compliance, "[t]he imposition of liquidated damages will also compensate the employee for the loss of the use of the money to which he was entitled" (Governor's Approval Mem, Bill Jacket, L 1967, ch 310 at 1524; 1967 NY Legis Ann at 271). The employee loses the use of money whether he or she is never paid, partially paid, *or paid late*.

*Id.* at 2 fn 2 (emphasis added).  In other words, an employer's failure to pay an employee on time constitutes an underpayment which entitles the employee to liquidated damages on those late payments, even if the employer later made a complete payment of wages. While Defendant attempts to limit the decision in *Vega* to being "merely that an employee can assert a private cause of action for late payment of wages[,]" they cannot escape the clear statements of the *Vega* Court that (a) late payments entitle employees to liquidated damages, and (b) complete payment of wages does not exonerate the employer from paying those liquidated damages.

Finally, and not surprisingly, courts—both before and since *Vega* was decided—that have assessed damages for NYLL § 191 violations have followed the clear-cut approach outlined in

*Vega* and have found that "there is no question that Plaintiffs are entitled to damages equal to the actual amount of wages that were paid late." *Brito v. Marina's Bakery Corp*., No. 19-CV-00828(KAM)(MMH), 2022 U.S. Dist. LEXIS 53351, at *57-59 (E.D.N.Y. Mar. 24, 2022); *see also, e.g., Ho v. Target Constr. of NY, Corp*., No. 08-CV-4750(KAM)(RER), 2011 U.S. Dist. LEXIS 33365 (E.D.N.Y. Mar. 28, 2011) (bench trial decision awarding manual workers liquidated damages on late payments of wages pursuant to NYLL §§ 191, 198); *Gonzalez v. Gan Israel Preschool*, 2014 U.S. Dist. LEXIS 34633, at *44 (E.D.N.Y. Feb. 5, 2014) ("Under NYLL § 191, Plaintiff['s] damages include unpaid wage interest and liquidated damages."); *Carrera v. Dt Hosp. Grp*., 2021 U.S. Dist. LEXIS 210894, at *26-30 (S.D.N.Y. Nov. 1, 2021) (awarding full liquidated damages for unpaid wages claim under § 191); *Jian Zhong Chen v. JP Standard Constr. Corp*., No. 14-CV-1086 (MKB), 2016 U.S. Dist. LEXIS 36464, at *38 (E.D.N.Y. Mar. 18, 2016) *report and recommendation adopted by* 2016 U.S. Dist. LEXIS 63007 (E.D.N.Y. May 12, 2016) (same); *Thompson v. Jennings & Hartwell Fuel Oil Corp*., No. 14 CV 1857 (RJD)(LB), 2015 U.S. Dist. LEXIS 123061, at *19 (E.D.N.Y. Aug. 27, 2015) (same).

### C.    The Complaint Adequately Alleges Standing

The Complaint also adequately alleges Article III standing for Plaintiff's N.Y. Lab. L. § 191 claim and should not be dismissed.  The elements of Article III standing are "(1) an injury in fact, (2) a causal connection between that injury and the conduct at issue, and (3) a likelihood that the injury will be redressed by a favorable decision." *Maddox v. Bank of N.Y. Mellon Trust Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (internal quotation marks and citation omitted).  An injury in fact exists where there is "the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical." *Id*. (insertion in original; internal quotation marks omitted). "[C]ertain harms readily qualify as concrete injuries

under Article III.  The most obvious are traditional tangible harms, such as physical harms and

*monetary harms*." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (emphasis added).

> **i.      Plaintiff has standing to pursue N.Y. Lab. L. § 191 claims for the late payment of wages**

An underpayment of wages is an axiomatic example of a monetary harm that inherently

gives rise to Article III standing.[6]  As outlined above, under both the NYLL and FLSA, a late

payment of wages is an underpayment of wages. *See Vega*, 175 A.D.3d at 1145 (holding that an

employee suffers an "underpayment" of wage "[t]he moment that an employer fails to pay wages

in compliance with [the timely pay requirements of NYLL] section 191(1)(a)"); *Rigopoulos v.*

*Kervan*, 140 F.2d 506, 507 (2d Cir. 1943) ("Section 7 of the [FLSA] plainly contemplates that

overtime compensation shall be paid in the course of employment and not accumulated beyond

the regular pay day.  Hence, the failure to pay it when due was a violation of section 7, which

rendered the employer 'liable,' as declared in section 16(b), not only for the unpaid overtime

compensation but also for liquidated damages in an additional equal amount.").  An employee is

necessarily harmed by the late payment of wages because "[t]he employee loses the use of money

whether he or she is never paid, partially paid, or paid late." *Vega*, 175 A.D3d at 1146 n.2.  The

liquidated damages provisions of the NYLL and FLSA exist to remedy this harm. *Id*. (noting that

the stated purpose of NYLL liquidated damages is to "compensate the employee for the loss of the

use of the money to which he was entitled").  As the Supreme Court has stated,

> the liquidated damage provision [of the FLSA] is not penal in its nature but
> constitutes compensation for the retention of a workman's pay which might result
> in damages too obscure and difficult of proof for estimate other than by liquidated
> damages.  It constitutes a Congressional recognition that failure to pay the statutory
> minimum on time may be so detrimental to maintenance of the minimum standard
> of living necessary for health, efficiency and general well-being of workers and to

---

[6]  Notably, Plaintiff is not aware of any federal court that has required a plaintiff who alleges that he was not paid all wages due under the FLSA or a state analog to state what he would have done with the unpaid wages in order to establish standing.

the free flow of commerce, that double payment must be made in the event of delay
in order to inure restoration of the worker to that minimum standard of well-being.

*Brooklyn Sav. Bank*, 324 U.S. at 707 (1945) (internal quotation marks omitted); *see also Overnight
Motor Transp. Co. v. Missel*, 316 U.S. 572, 584, 62 S. Ct. 1216, 86 L. Ed. 1682 (1942) ("The
liquidated damages for failure to pay the minimum wages . . . are compensation, not a penalty or
punishment. . . . The retention of a workman's pay may well result in damages too obscure and
difficult of proof for estimate other than by liquidated damages.) (citations omitted).  Using this
rationale, almost since the inception of the FLSA, the federal courts have adjudicated FLSA claims
where, just as in this case, the plaintiffs' wages were paid late but in full, and the plaintiffs sought
only liquidated damages.  *E.g.*, *id.*; *Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998); *Calderon
v. Witvoet*, 999 F.2d 1101, 1107 (7th Cir. 1993); *Rigopoulos*, 140 F.2d at 507; *Hunt v. Interactive
Med. Specialists, Inc.*, No. 19 CV 13, 2019 U.S. Dist. LEXIS 208561, at *3 (N.D.W.V. Dec. 4,
2019) ("[T]he parties do not dispute that Hunt sufficiently alleged an injury in fact by alleging that
the Defendants willfully paid her . . . less than the minimum wage for work performed during three
pay periods amidst the recent Government shutdown.  Although the Defendants eventually paid
these wages, other courts have held that employers violated the FLSA by failing to pay minimum
wages on time during a budget impasse.").

Courts can adjudicate such claims because, as Judge Kovner recently noted in a case
involving N.Y. Lab. L. § 191 claims, "there is not ground for substantial difference of opinion
about whether the temporary deprivation of money to which a plaintiff has a right is a sufficient
injury to establish standing."  *Caul v. Petco Animal Supplies, Inc*., No. 1:20-cv-03534-RPK-SJB,
2021 U.S. Dist. LEXIS 253174, at *5-7 (E.D.N.Y. Dec. 22, 2021) ("[The complaint] alleges that
throughout plaintiff's employment, defendants paid her on a bi-weekly basis, instead of within
seven calendar days after the end of the week in which wages were earned, as she alleges was

14

required by law.  Those allegations are adequate to plead that she was deprived of the time value

of her money during periods in which payment was illegally delayed."); *see also, e.g., McRobie v.*

*Palisades Acquisition XVI, LLC,* No. 15 CV 18, 2022 U.S. Dist. LEXIS 38778, at \*39 (W.D.N.Y.

Mar. 4, 2022) (Report & Recommendation) ("The complaint alleges that defendants received over

$500 by unlawfully executing on McCrobie's income.  Further, although the funds were apparently

returned to McCrobie when the default judgment was initially vacated, McCrobie was never

compensated for the period of time he was deprived of his money.  This deprivation constitutes a

concrete injury.").

Defendant's entire argument against standing here is limited to a scant three sentences.

Defendant simply states:

> Plaintiff has not alleged any economic loss. He does not claim he is due any
> payments; he concedes he was paid all earnings he was due. Thus, he cannot
> establish standing by reference to past due earnings.

Defs.' Mem at 7 (internal citation omitted).  This "argument" misses the point.  Plaintiff does not

need to claim that he is *currently* due any payments from Defendant in order to establish economic

loss.  The temporary deprivation of money–even if later repaid–is *by definition* an economic loss.

In *TransUnion,* the Supreme Court explained that in evaluating standing, "courts should

assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally

recognized as providing a basis for a lawsuit in American courts." 141 S. Ct. at 2204.  Under this

analysis, "certain harms readily qualify as concrete injuries under Article III.  The most obvious

are traditional tangible harms, such as physical harms and *monetary harms*." *Id*. (emphasis added).

Thus, there is no question that a monetary harm suffices to establish a "concrete injury" for

constitutional standing purposes and, as set forth above, the late payment of wages has long been

recognized as a monetary harm.  Moreover, the temporary deprivation of money "is analogous to

a harm that has traditionally been regarded as providing a bases for a lawsuit in English or American courts – a debtor's delinquent payment to a creditor." *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019) (internal citation omitted). Here, Defendant's unlawful retention of Plaintiff's and the putative class members' wages is also akin to unjust enrichment

While the Second Circuit has not squarely addressed the issue, other circuits have correctly held that the temporary deprivation of money belonging to a plaintiff is a concrete, monetary harm that establishes Article III standing. *See, e.g., Van v. LLR, Inc.*, 962 F.3d 1160, 1161 (9th Cir. 2020) ("This case requires us to address whether the temporary deprivation of money gives rise to an injury in fact for purposes of Article III standing. We agree with other circuits that the inability to have and use money to which a party is entitled is a concrete injury. This is so because every day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money.") (internal quotation marks omitted); *MSPA Claims 1, LLC*, 918 F.3d at 1318; *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828-29 (7th Cir. 2018) (three day delay in restoring funds to plaintiff's bank account that were used for a fraudulent purchase was an economic injury because it deprived the plaintiff of the time value of money); *see also Almon v. Conduent Bus. Servs., LLC*, No. 19 CV 1075, 2022 U.S. Dist. LEXIS 55025, at *46-47 (W.D. Tex. Mar. 25, 2022) ("Defendants assert that Plaintiffs who were ultimately 'made whole' by credits to their accounts in the full amount of their disputed transactions do not have standing to challenge the timeliness of their credits. . . . But our laws plainly recognize that payment today is not the same as payment tomorrow. This first principle of economics, known as the 'time value of money,' is certainly not unknown to large financial institutions such as Comerica and Conduent. Indeed, their livelihood depends to a large degree on the common measure of the difference between payment now and

16

payment later – interest.") (internal citations omitted); *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019) ("[T]emporary deprivation of money to which a plaintiff has a right constitutes sufficient injury in fact to establish Article III standing.  As the Honorable Richard Posner has observed, albeit in another context, 'every day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money.'").

ii. **Even if a plaintiff must allege more than just a late payment of wages to establish standing, the Complaint satisfies that standard**

For the reasons set forth above, Plaintiff's allegations that he was paid late (Complaint ¶ 50) are sufficient, standing alone, to establish a concrete injury for standing purposes.  However, even if additional allegations of harm are necessary, the allegations in the Complaint satisfy that standard. In the Complaint, Plaintiff alleges,

> Every time that Defendant failed to pay Plaintiff his wages earned within seven days of the end of the workweek, Defendant deprived him of the use of money that belonged to him.  As a result, Plaintiff was unable to do those things that every person does with their money, such as paying bills or buying goods that he needed or wanted to buy.  Moreover, by retaining money that belonged to Plaintiff, Plaintiff lost the time value of money.

*Id*. at ¶ 51.  These are the very facts that numerous courts have held constitute a concrete injury for standing purposes: that by keeping money that belonged to Plaintiff, Defendant prevented Plaintiff from using that money. *E.g.*, *Van*, 962 F.3d at 1164-65; *MSPA Claims 1, LLC*, 918 F.3d at 1318 ("The inability to have and use money to which a party is entitled is a concrete injury."); *Dieffenbach*, 887 F.3d at 829.  This harm is inherent to the deprivation of money that belongs to a plaintiff: "If you part with money, you lose liquidity (the instant ability to deploy cash) and in addition incur a risk of never getting your money back."), *Habitat Educ. Center v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010); *see also In re Murel Holding Corp.*, 75 F.2d 941, 942 (2d Cir. 1935) ("It is plain that . . . payment ten years hence is not generally the equivalent of

payment now. Interest is indeed the common measure of the difference, but a creditor who fears the safety of his principal will scarcely be content with that; he wishes to get his money or at least the property.")

In this regard, Defendant's bald assertion that Plaintiff does not have standing because he "has not alleged any economic loss" is, once again, simply not true.  Plaintiff unambiguously alleges that he and his coworkers were deprived of the use of the money that belonged to them and there can be no question that statement sets forth an allegation of a concrete injury.

### D.  The Definition Of "Wages" Under Article 6 Of The Labor Law Includes Salaries

If Defendant's omission of all of the cases from this Circuit that upheld *Vega* or their claim that Plaintiff has not alleged a concrete injury when he plainly has are not enough, Defendant's most bizarre argument is an attempt to upend Article 6 of the NYLL by arguing that that the definition of "wages" in that Article 6 somehow does not encompass salaried employees. Defs.' Mem. at 9-12.  This argument flies in the face of the clear-cut definition of wages under Article 6 which has consistently been found to cover employees who are paid a salary.

Article 6 of the Labor Law is entitled "Payment of Wages," and its provisions cover all "employees," defined as "any person employed for hire by an employer in any employment." N.Y. Lab. Law § 190(2); *see also Pachter v. Bernard Hodes Grp., Inc*., 2008 NY Slip Op 5300, ¶ 5, 10 N.Y.3d 609, 616, 861 N.Y.S.2d 246, 250, 891 N.E.2d 279, 283 (holding that the provisions of this Article cover all employees "except where expressly excluded").  Significantly, the term "wages" is defined in § 190 of Article 6 as "the earnings of an employee for labor or services rendered, *regardless of whether the amount of earnings is determined on a time, piece, commission or other basis*. N.Y. Lab. Law § 190(1) (emphasis added).  Without belaboring the obvious, there can be no doubt that a salary earned by an employee constitutes their "earnings […] for labor or services

rendered" and is thus covered by this definition. *See Truelove v. Ne. Capital & Advisory, Inc.*, 95 N.Y.2d 220, 224, 715 N.Y.S.2d 366, 368, 738 N.E.2d 770, 772 (2000) (discussing § 190 and finding that the wording of the statute "expressly" links earnings to an employee's labor or services personally rendered"); s*ee also, e.g., Garcia v. Giorgio's Brick Oven & Wine Bar*, No. 11 Civ. 4689 (LLS) (FM), 2012 U.S. Dist. LEXIS 118393, at *10-11 (S.D.N.Y. Aug. 15, 2012) (finding violation of § 191 for late "wage" payment where employee was owed a "salary" which was withheld), *report and recommendation adopted*, No. 11 Civ. 4689 (LLS) (FM), 2012 U.S. Dist. LEXIS 127818 (S.D.N.Y. Sep. 7, 2012).

In short, while the statute straightforwardly defines wages as including *all earnings* for labor or services rendered, Defendant—armed with nothing more than its own misguided reading of the statute and, once again, failing to acknowledge the countless cases that point to this reading being wrong—would have the Court believe that that term covers nothing but hourly wages. Though Defendant desperately would like the definition of wages to be limited to hourly wage earners, the definition in § 190(1) unambiguously applies to "earnings [] determined on a time [] basis." N.Y. Lab. Law § 190(1).  Here, where there is no dispute that Plaintiff and his coworkers were paid on a "bi-weekly" basis (*see* Ex. A to Complaint; Dkt. No. 10-1), there is no dispute that their earnings were determined on a "time" basis.  To the extent any question still remains as to whether "time" covers employees paid a bi-weekly salary, the definition of "wages" in § 190(1) states even more expansively that the term "wages" encompasses earnings paid on any "other basis" which would obviously include salaries. *Id*.  Put simply, the only question involved in a § 191(1)(a) analysis of an employee's frequency of pay entitlement is simply: are they a manual laborer.  Whether they are paid hourly, weekly, bi-weekly or otherwise is simply of no moment

and once an employee establishes the simple fact that they are a manual laborer they are entitled to be paid on a weekly basis as required under § 191(1)(a).

To the extent that the plain reading of the definition of "wages" in Article 6 is not enough, the New York Court of Appeals has also clarified that the definition of wages under Article 6 covers all forms of non-discretionary payments that are "expressly link[ed]" to "labor or services personally rendered" by an employee—and not just hourly wages. *Ryan v. Kellogg Partners Institutional Servs*., 2012 NY Slip Op 2248, ¶ 11, 19 N.Y.3d 1, 16, 945 N.Y.S.2d 593, 602, 968 N.E.2d 947, 956 (bonus of salaried employee constituted wages under Labor Law § 190(1) where payment was guaranteed, in a fixed amount, as a substitute for half of the employee's salary, and was expressly linked to his personal labor and services).  Thus, not surprisingly, New York federal and state courts have consistently held that, unless specifically excluded from a provision of Article 6, salaried employees (such as Plaintiff and the putative class members here) are covered by all the provisions of that Article that appertain to employees earning "wages."

For example, the NYLL's illegal deduction provision in § 193, which provides that, unless certain preconditions are met, "[n]o employer shall make any deduction from the *wages* of an employee," is a perfect example of Defendant's misguided mischaracterization here. *See* N.Y. Lab. Law § 193 (emphasis added).  In that context, courts have consistently held that where salaried employees bring claims for unlawful deductions from their salaries, "wages for the purpose of [sections] 193 and 198 includes salary and other benefits." *Falk v. FFF Indust., Inc*., 731 F. Supp. 134, 143 (S.D.N.Y. 1990); *see also, e.g., Ryan*, 19 N.Y.3d 1 (holding that a salaried employee's bonus constituted "wages" within the meaning of Labor Law § 190(1)); *Avelar v. Ed Quiros, Inc.*, No. CV 13-7017(ADS)(GRB), 2015 U.S. Dist. LEXIS 33745, at *14-15 (E.D.N.Y. Feb. 26, 2015) ("Plaintiffs have alleged that defendants made unlawful deductions of 10 percent of their *salary*

from plaintiffs' biweekly cash payment of wages . . . These allegations reflect a violation of Section 193 of the NYLL.") (internal citation omitted) (emphasis added), *report and recommendation adopted*, No. 13-cv-7017, 2015 U.S. Dist. LEXIS 33665 (E.D.N.Y. Mar. 18, 2015); *Wachter v. Kim*, 2011 NY Slip Op 2526, ¶¶ 4-5, 82 A.D.3d 658, 663, 920 N.Y.S.2d 66, 71-72 (App. Div. 1st Dept.) (finding promise of "aggregate cash compensation of not less than $2,000,000" was "'wages' that are protected by Labor Law § 193 (1) and § 198"); *Danusiar v. Auditchain USA, Inc.*, No. 20-CV-1477 (KNF), 2020 U.S. Dist. LEXIS 186941, at *29 (S.D.N.Y. 2020) ("plaintiff's allegations that he earned his "wages," *which included his salary*, bonus and separation pay, and the defendants failed to pay his earned 'wages,' [are] sufficient factual content [....] to draw the reasonable inference that the defendants are liable for violating Section 193 . . .")(emphasis added); *Ribbler v. Chicksation Inc.*, 2018 NY Slip Op 31814(U), ¶ 11 (Sup. Ct.) ("An employee pleads a claim for unpaid compensation under NYLL where she alleges that her employer did not pay her promised wages, including guaranteed salary, bonuses, and fringe benefits.").

Similarly, N.Y. Lab. Law § 195(3) which provides that employers must provide their employees with wage statements including specific information "with every payment of *wages*" has consistently been found to apply to employees who are salaried. *See, e.g., Ga Ho Kim v. DK Cosmetics*, No. 19-CV-9079 (JMF), 2022 U.S. Dist. LEXIS 32972, at *5-6 (S.D.N.Y. Feb. 23, 2022) (granting summary judgment to employee paid a "fixed salary" who did not receive wage statements as required by § 195(3)) (Furman J.); *Neri v. Abi Japanese Rest.*, No. 20-CV-581 (MKB), 2021 U.S. Dist. LEXIS 252853 (E.D.N.Y. Nov. 24, 2021) (same); *Corrales v. AJMM Trucking Corp.*, No. 19-cv-4532 (LJL), 2020 U.S. Dist. LEXIS 69417 (S.D.N.Y. Apr. 20, 2020).[7]

---

[7] The cases upon which Defendant relies for the proposition that "wages" in Article 6 does not cover salaried employees were, with one exception, all decided long before the New York State legislature enacted Article 6 in 1966 at which point it provided the first statutory definition of the term "wages." *See Truelove*, 95 N.Y.2d at 225. The lone post-1966 case, *Williams v. AGK Communications, Inc*, 143 Misc.2d 845, 849, 542 N.Y.S.2d 122, 125

As a final example, N.Y. Lab. Law § 194 which provides that "[n]o employee with status within one or more protected class or classes shall be paid a *wage* at a rate less than the rate at which an employee without status within the same protected class or classes in the same establishment is paid for: (a) equal work […], or (b) substantially similar work […]," has similarly been applied to employees who earned salaries. N.Y. Lab. Law § 194 (emphasis added); *see, e.g., Tulino v. City of N.Y.*, No. 15-CV-7106 (JMF), 2018 U.S. Dist. LEXIS 51391 (S.D.N.Y. Mar. 27, 2018) (considering equal pay claim under § 194 for salaried employee) (Furman J.).

In short, Defendant's attempts to redefine "wages" in Article 6 contradicts (a) the explicit definition provided by the statue itself, and (b) hundreds of cases that have applied that term to individuals who earned compensation other than hourly wages and should be rejected.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion should be denied.

Dated:  New York, New York
        May 27, 2022
                                          JOSEPH & KIRSCHENBAUM LLP

                                          By:   /s/ Josef Nussbaum
                                          D. Maimon Kirschenbaum
                                          Josef Nussbaum
                                          32 Broadway, Suite 601
                                          New York, NY 10004
                                          212-688-5640

                                          *Attorneys for Plaintiff*
                                          *and proposed Class*

---

(Sup. Ct. Onondaga Cty. 1989) upon which Defendant relies is clearly wrong as (a) it ignores the simple meaning of the definition of "wages" in § 190(1), and (b) it contradicts all the other federal and state courts, including the New York Court of Appeals, that have not limited provisions of Article 6 individuals who perform "manual labor" or "menial jobs" or to individuals who are paid on an hourly basis.