UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

PHILIP GORDON, individually and on behalf
of all others similarly situated,

              Plaintiff,

    v.

BLUETRITON BRANDS, INC., (f/k/a
NESTLE WATERS NORTH AMERICA,
INC.),

              Defendant.

22 CV 2138 (JMF)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

D. Maimon Kirschenbaum
Josef Nussbaum
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 981-9587 (fax)

*Attorneys for Plaintiff and proposed Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. i

I.   PRELIMINARY STATEMENT ........................................................................ 1

II.  BACKGROUND ................................................................................................ 2

    A. All RSRs Were Manual Workers Primarily Engaged in Physical Labor ......................... 3

      i.   BlueTriton Brands Inc. ................................................................................. 4

      ii.  RSR's Job Duties ......................................................................................... 5

        1. Non-CDL Level 1 and CDL Level 2 Delivery Drivers' Duties ................................ 6

        2. DSDs and Commission RSRs ......................................................................... 9

    B. Defendant Failed to Pay Class Members On a Weekly Basis and They Are Entitled to Liquidated Damages .................................................................................. 10

III. ARGUMENT ................................................................................................... 11

    A. Plaintiff Satisfies The Requirements For Class Certification

      Under Fed. R. Civ. P. 23 .................................................................................. 11

    B. Plaintiff Satisfies the Requirements of Rule 23(a) ............................................... 12

      i.   Numerosity – Rule 23(a)(1) ......................................................................... 12

      ii.  Commonality – Rule 23(a)(2) ....................................................................... 12

iii. Typicality – Rule 23(a)(3) ................................................................................ 15

iv.  Adequacy – Rule 23(a)(4) ................................................................................ 17

v.   Rule 23(A)'s implied ascertainability requirement ................................................... 17

    C. Class Certification Under Rule 23(b)(3) Is Appropriate ......................................... 18

      i.   Common questions of law and fact predominate .............................................. 18

      ii.  A class action is superior to other methods of adjudication ................................ 19

    D. Plaintiff's Counsel Should be Appointed as Class Counsel .................................... 20

    E. The Proposed Notices Satisfies The Requirements Of Rule 23(C)(2)(B) ..................... 21

IV. CONCLUSION ................................................................................................. 22

## TABLE OF AUTHORITIES

**Cases**

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. May 24, 2001) ............... 13

*Aponte v. Comprehensive Health Mgmt.*, No. 10 Civ. 4825 (PKC), 2011 U.S. Dist. LEXIS 60882 (S.D.N.Y. June 1, 2011) .......................................................................................................... 11

*Argudo v. Parea Grp. LLC*, No. 18-CV-0678 (JMF), 2019 U.S. Dist. LEXIS 163249 (S.D.N.Y. Sep. 24, 2019) ............................................................................................................................. 2

*Beh v. Cmty. Care Companions*, No. 19-CV-1417-JLS-HBS, 2021 U.S. Dist. LEXIS 197316, (W.D.N.Y. Feb. 1, 2021) ............................................................................................................ 17

*Brown v. Kelly,* 609 F.3d 467 (2d Cir. 2010) .............................................................................. 18

*Capsolas v. Pasta Resources, Inc.*, No. 10 Civ. 5595, 2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) .............................................................................................................................. 21

*Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283 (2d Cir. 1999) ....................................... 16

*Caul v. Petco Animal Supplies, Inc.*, Case No. 20-cv-3534, 2021 U.S. Dist. LEXIS 184652 (E.D.N.Y. Sept. 27, 2021) .......................................................................................................... 10

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008) ........................................ 14,16

*Daniels v. City of New York*, 198 F.R.D. 409 (S.D.N.Y. 2001) .................................................... 13

*Davis v Carlo's Bakery 42nd & 8th LLC*, 2022 NY Slip Op 31876(U) (Sup Ct, NY County 2022) ..................................................................................................................................................... 3

*Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125 (S.D.N.Y. 2003) ........................................... 18

*Duverny v. Hercules Medical P.C.*, No. 18cv07652 (DLC), 2020 U.S. Dist. LEXIS 37547, 2020 WL 1033048 (S.D.N.Y. Mar. 3, 2020) ...................................................................................... 10

*Enea v. Bloomberg, L.P.*, No. 12 Civ. 4656, 2014 WL 1044027 (S.D.N.Y. Mar. 17, 2014) ....... 19

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ................................................ 13

*Freeland v. AT&T Corp.*, 238 F.R.D. 130 (S.D.N.Y. 2006) ....................................................... 13

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100 (E.D.N.Y. 2011) ................. 16

*Gillett v. Zara USA, Inc.*, 2022 U.S. Dist. LEXIS 143434 (S.D.N.Y. Aug. 10, 2022) ................. 10

i

*Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385 (N.D.N.Y. 2011) .............................. 17

*Hart v. Rick's Cabaret Int'l Inc.,* Case No. 9-cv-3043, 2010 U.S. Dist. LEXIS 137129 (S.D.N.Y. Dec. 17, 2010)............................................................................................................................... 2

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007)................................ 13

*In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285 (2d Cir. 1992) ..................................... 15

*In re Milos Litig.*, No. 08 Civ. 6666, 2011 U.S. Dist. LEXIS 138473 (S.D.N.Y. Sept. 8, 2011)......................................................... 21

*In re US Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013 .......................................... 18

*In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ............................. 19

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152 (S.D.N.Y. 2014) .................................................... 12

*Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128 (2d Cir. 2015) .................................................. 11

*Larin v. Smith*, No. 11-CV-5921 (ADS)(SIL), 2017 U.S. Dist. LEXIS 129011 (E.D.N.Y. Aug. 11, 2017) ........................................................................................................................................ 4

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006) .................................................... 17

*Mabe v. Wal-Mart Assocs., Inc.*, No. 1:20-cv-00591, 2021 U.S. Dist. LEXIS 50954, 2021 WL 1062566 (N.D.N.Y. Mar. 18, 2021)............................................................................................ 10

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ................................................................... 15

*Murphy v. Lajaunie*, No. 13 CV 6503, 2015 U.S. Dist. LEXIS 97531 (S.D.N.Y. July 24, 2015) ......................................................... 21

*Niemiec v. Ann Bendick Realty*, No. 04 Civ. 897 (ENV), 2007 U.S. Dist. LEXIS 98840, (E.D.N.Y. Mar. 30, 2007) ........................................................................................................... 20

*Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004)................................................ 20

*Pachhter v. Bernard Hodes Group, Inc.*, 505 F.3d 129 (2d Cir. 2007)......................................... 3

*Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-3765, 2012 U.S. Dist. LEXIS 46408 (E.D.N.Y. Apr. 2, 2012)............................................................................................................. 13

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)....................................................................... 15

ii

*Schear v. Food Scope Amer., Inc.*, 297 F.R.D. 114 (S.D.N.Y. 2014)............................................ 18

*Scott v. Whole Foods Mkt. Grp., Inc.*, No. 18-CV-0086 (SJF) (AKT), 2020 U.S. Dist. LEXIS
255455, 2020 WL 9814095 (E.D.N.Y. Feb. 5, 2020)....................................................... 10

*Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234 (2d Cir. 2011).......................... *passim*

*Sorto v. Diversified Maint. Sys., LLC*, No. 20-CV-1302(JS)(SIL), 2020 U.S. Dist. LEXIS
242856, 2020 WL 7693108 (E.D.N.Y. Dec. 28, 2020) ........................................................ 10

*Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323 (ALC)(AJP), 2013 U.S. Dist. LEXIS
36357 (S.D.N.Y. Mar. 15, 2013) .............................................................................. 13

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) ........................................... 14

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196 (2d Cir. 2008)
.......................................................................................................... 11

*Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2006 U.S. Dist. LEXIS 74039
(S.D.N.Y. Sept. 29, 2006)...................................................................................... 11

*Trinidad v. Breakaway Courier Sys.*, No. 05 Civ. 4116 (RWS), 2007 U.S. Dist. LEXIS 2914
(S.D.N.Y. Jan. 12, 2007)...................................................................................... 20

*Vargas v. Howard*, 324 F.R.D. 319 (S.D.N.Y. 2018)................................................... 11

*Vega v. CM & Assoc. Constr. Mgmt., LLC*, 175 A.D. 1144 (1ˢᵗ Dept. 2019).............................. 10

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .............................................. 12

*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193 (S.D.N.Y. 2011) ........................... 15

*Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61 (S.D.N.Y. 2018) ....................................... 15

## Statutes

Fed. R. Civ. P. 23 .............................................................................. *passim*

N.Y. Lab. L. § 191 ............................................................................. *passim*

NYLL § 190 ............................................................................................ 3

## Other Authorities

N.Y. Dep't of Labor Counsel Opinion Letter RO-07-0072, July 11, 2007 ................................. 4

N.Y. Dep't of Labor Counsel Opinion Letter RO-09-0066, May 21, 2009 ................. …………...4

iii

Plaintiff Philip Gordon ("Plaintiff") submits this memorandum in support of his motion for class certification of his New York state wage and hour claims pursuant to Fed. R. Civ. P. 23.[1]

## I.   PRELIMINARY STATEMENT

This action asserts New York Labor Law Section 191 claims on behalf of all ReadyRefresh Services Representatives ("RSRs") who worked as beverage delivery drivers for Defendant BlueTriton Brands, Inc., (formerly known as "Nestle Waters North America, Inc.") ("Defendant" or "BTB") in New York State at any time on or after November 11, 2015 (the "Class" or "Class Members"). Complaint. Dkt. No. 10, ¶¶ 1-7 ("Compl.").[2]  All of the Class Members were "manual workers" under the NYLL, but Defendant unlawfully paid them bi-weekly. By this motion, Plaintiff seeks to certify the aforementioned class with respect to his claim that Defendant violated New York law by failing to pay all their "manual worker" delivery drivers on a timely basis (at least once per week) as required by N.Y. Lab. L. § 191.

Plaintiff's proposed class is limited to employees of BTB that (a) clearly worked as manual workers, *i.e.*, delivery drivers, and (b) were undisputedly paid bi-weekly, rather than weekly as required by the New York Labor Law. Thus, the Fed. R. Civ. P. 23(a) ("Rule 23") prerequisites are handily met because (1) the proposed class has significantly more than 40 members, and, in fact, has at least 900 members; (2) the claims involve policies to which all Class Members were subject – being paid bi-weekly rather than weekly, (3) Plaintiff's claims and circumstances are the same as the absent Class Members he seeks to represent in that all have been injured by the same

---

[1]  With this memorandum of law, Plaintiff submits the October 7, 2022 declaration of Josef Nussbaum ("Nussbaum Decl.") and exhibits thereto ("Nussbaum Ex. __"); and the October 7, 2022 declaration of Philip Gordon ("Gordon Decl.").  All exhibits referenced herein are to the exhibits to the Nussbaum Decl.

[2]  While Plaintiff's Complaint was filed in March 2022, in November 2021, the parties executed a tolling agreement whereby putative class members' New York Labor Law claims were tolled as of November 11, 2015.

violations, and all will benefit from the relief sought; and (4) Plaintiff and his counsel will vigorously prosecute this action and adequately represent the Class.

Rule 23(b)(3) is appropriately applied because the common factual and legal issues predominate. Further, a class action is superior to requiring that putative Class Members pursue individual actions. Because all of the putative class members were unlawfully paid bi-weekly rather than weekly, this case is typical of one that is routinely certified in this Circuit – where a class of employees all subject to common policies brings claims alleging that their employer violated the New York Labor Law. *See e.g., Argudo v. Parea Grp. LLC*, No. 18-CV-0678 (JMF), 2019 U.S. Dist. LEXIS 163249 (S.D.N.Y. Sep. 24, 2019) (Furman J.); *Hart v. Rick's Cabaret Int'l Inc.,* Case No. 9-cv-3043, 2010 U.S. Dist. LEXIS 137129 at *16-23 (S.D.N.Y. Dec. 17, 2010).

For the reasons set forth below, Plaintiff respectfully requests that the Court:

(1)   Certify a subclass defined as all RSRs who worked for Defendant in New York State at any time on or after November 11, 2015 and whom did not earn any commissions;

(2)   Certify a subclass defined as all RSRs who worked for Defendant in New York State at any time on or after November 11, 2015 and who earned commissions (collectively with the RSRs who did not earn commissions, the "Subclass Members");

(3)   Appoint Philip Gordon as Class Representative of both subclasses;

(4)   Appoint Plaintiff's counsel as Class Counsel;

(5)   Order Defendant to produce to Plaintiff a Microsoft Excel list, in electronic format, of all Subclass Members' names, last known address, all known telephone numbers, dates of employment, and job titles; and

(6)   Authorize the mailing of the proposed Notice to all Class Members.

## II.   BACKGROUND

From November 11, 2015 through the present day, Defendant BTB has employed over 900 RSR delivery drivers throughout New York State. Nussbaum Decl., Ex. A ("Tr:__:__") 29:15-30:5; Ex. B.  Plaintiff Gordon was employed by Defendant as a beverage delivery driver from

approximately September 2018 until June 2021. Gordon Decl. ¶ 1.   From approximately September 2018 until June 2020, Plaintiff was employed by Defendant as a delivery driver simply called a "ReadyRefresh Service Representative" ("RSR"). *Id*. ¶¶ 2-3.  From June 2020 until he ceased working for BTB in June 2021, Plaintiff continued working for Defendant as an RSR with the added title of "Delivery Service Driver" ("DSD RSR"). *Id*. ¶ 4.  There is no dispute that, between November 2015 and March 2022, Defendant paid Plaintiff and all other RSRs who worked in New York State every two weeks. Ex. A, Tr. 98:18-20; Gordon Decl. ¶ 24.

Plaintiff's allegations are straightforward and simple – Plaintiff, along with all other similarly situated delivery drivers, were "manual workers" under the New York Labor Law, and Defendant violated this statute by not paying their wages within seven days after the end of the week in which the wages were earned, as required under N.Y. Lab. Law § 191(a). *See* Compl. ¶¶ 1-7, 36-53.  In short, Defendant was required to pay Plaintiff, and others like him, weekly, but it failed to do so.

### A.  All RSRs Were Manual Workers Primarily Engaged in Physical Labor

The requirements in NYLL § 191(1)(a) are clear – "A manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." N.Y. Lab. Law § 191(1)(a); *see also Pachter v. Bernard Hodes Group, Inc.*, 505 F.3d 129, 132 (2d Cir. 2007) ("[Section 191] details the frequency of payments for specific workers[, namely] manual workers, railroad workers, commission salesmen, and clerical and other worker[s]." NYLL § 190(4) defines "manual worker" to mean 'a mechanic, workingman or laborer." N.Y. Lab. Law § 190(4).   "Manual workers are defined as employees who spend more than 25 percent of their working time performing physical labor." *Davis v Carlo's Bakery 42nd & 8th LLC*, 2022 NY Slip Op 31876(U), *1 (Sup Ct, NY County 2022) (quotation omitted); *see also Larin v. Smith*, No. 11-

CV-5921 (ADS)(SIL), 2017 U.S. Dist. LEXIS 129011, at *15 (E.D.N.Y. Aug. 11, 2017) ("It has been [the New York Department of Labor]'s longstanding interpretation of the term 'manual workers' that the term includes employees who spend more than 25 percent of their working time performing physical labor." (citing N.Y. Dep't of Labor Counsel Opinion Letter RO-09-0066, May 21, 2009, available at https://statistics.labor.ny.gov/legal/counsel/pdf/Other/RO-09-0066%20Manual%20Workers.pdf (last accessed April 28, 2022)). Importantly, a determination of what constitutes a "manual worker" is conducted on a "case-by-case determination." *Id.* Here, because all RSRs devote far in excess of 25% percent of their work time to "physical labor," these employees are considered "manual workers" under the NYLL. *See* N.Y. Dep't of Labor Counsel Opinion Letter RO-07-0072, July 11, 2007, available at https://statistics.labor.ny.gov/legal/counsel/pdf/Other/RO-07-0072.pdf (last accessed October 3, 2022) (finding that a chauffeur whose "*main duty is driving*" and who would also "*load and unload luggage for passengers*" and "*open and close doors for them*[,]" to be a manual worker for the purpose of NYLL § 191(1)(a)) (emphasis added).

### i. BlueTriton Brands Inc.

BTB describes itself as the "nation's leading bottled water company. Exs. C, D. The company is a service and product business that sells "healthy hydration options" to consumers. Ex. A, Tr. 13:25-14:5. BTB owns and distributes some of the largest bottled water brands in the United States, including Poland Spring, Arrowhead, Deer Park, Zephyrhills and Pure Life, among others. Exs. C, D. The company's service department is called "ReadyRefresh" which is the part of BTB that handles product deliveries to commercial and residential customers. Ex, A, Tr. 15:14-21. The ReadyRefresh arm includes RSRs who are the sole BTB employees responsible for delivering the company's products to its customers. *Id*. 17:15-20.

### ii.  RSR's Job Duties

RSR's are delivery drivers whose primary duties involve driving trucks filled with BTB's merchandise to BTB's customers and unloading and delivering the merchandise to the customers. Gordon Decl. ¶ 12, Exs. C, D, E.  While RSRs primarily deliver bottled water, they are also tasked with delivering equipment such as water coolers, coffee or cups, as well as other items that are involved with beverage consumption. Ex. A, Tr. 14:12-16. All RSRs perform driving, unloading and delivery duties. Gordon Decl. ¶ 12, Ex. A, Tr. 50:19-52:7, 56:10-57:15; Exs. C, D, E.

BTB divides RSRs into the following seven subcategories: (1) "Non-CDL Level 1" (or "Route Delivery Driver Non CDL"), (2) "CDL Level 2" (or "Route Delivery Driver CDL"), (3) "RSR Relief Specialist," (4) "RSR Training Mentor," (5) "Retail RSR," (6) "Direct Store Delivery RSRs" (or "DSDs"), and (7) "Commission RSRs." Ex. A, Tr. 23:7-16.  All RSRs in New York State are paid a salary, however DSDs and Commission RSRs are also afforded an opportunity to make sales and earn commissions over and above their annual salaries. *Id*. 62:3-8, 89:22-90:4. Significantly, Defendant admits that the employees within each of these 7 subcategories of RSRs have essentially the same job functions as all other employees in those subcategories. *Id*. 41:18-42:20.

In discovery in this Action, BTB produced a list of approximately 1,180 different RSR positions it employed during the limitations period (*i.e.*, since November 2015). Ex. B.  This list includes more than 900 different individuals that worked in those positions. *Id*.  The reason for the discrepancy between the number of RSR positions and individual employees is that some individuals worked in multiple RSR positions for the company. *Id*.[3]  Of the roughly 1,180 RSRs employed during the limitations, only roughly 150 worked as DSDs or Commission RSRs and, in

---

[3]  This can be confirmed by the identifying number in the first column of this exhibit. Each identifying number corresponds to a difference individual RSR employee. Ex. A, Tr. 77:21-78:8.

fact, most of the employees (more than two-thirds) who were employed as a DSD or Commission RSR were previously a non-commission RSR such as a Non-CDL Level 1 or CDL Level 2. Ex. *Id*.

### 1. Non-CDL Level 1 and CDL Level 2 Delivery Drivers' Duties

The vast majority of ReadyRefresh delivery drivers employed during the limitations period worked as Non-CDL Level 1 and CDL Level 2 drivers. Ex. B.   In fact, almost every single RSR worked at some point as either a Non-CDL Level 1 or CDL Level 2 driver. *Id*.  To the extent certain individuals were employed in other subcategories of RSRs, they were almost without exception originally employed as a Non-CDL Level 1 and CDL Level 2 drivers. Ex. *Id*.

For all the positions in question, the essential duties of the job are exactly the same: To arrive at BTB's warehouse, load their 8-bay or 10-bay trucks, drive the fully loaded trucks to each destination along their routes (as many as 50 stops in a day), unload the trucks at the each destination, and return the trucks to the warehouse. Gordon Decl. 7-22.  BTB promulgated "job descriptions" for both the Level 1 and Level 2 positions which layout the qualifications for the positions and are identical between the positions. Ex. A, Tr. 44:8-24, 49:17-50:18, 63:19-64:9; Exs. C, D, E. The job descriptions state drivers must have the following qualifications:

> **Qualifications**
> **We are looking to add to our troop of RSRs.**
> **What does that mean to you and what will you need:**
> - You'll need a clean driving record.
> - You need to be able to work in all kinds of weather while working out on your own with limited supervision.
> - Servicing our customers is hard work, and you will need to be able to climb in and out of the truck and carry product that can weigh up to 45 pounds.
> - You will get way more than your recommended 10,000 steps in a day, with plenty of water to keep you hydrated during the day.
> - You must have the ability to obtain a DOT medical card for the purpose of working for BlueTriton Brands.
> - Most importantly, you need to have a professional image and demeanor. We'll provide the cool uniform and truck.

Exs. C, D.

Defendant admits that these "job descriptions" cover the primary duties of the RSR's job duties. Ex. A, Tr. 106:21-107:4.  The core functions of all RSR's job descriptions that BTB has employed for Non-CDL Level 1 or CDL Level 2 drivers during the limitations period. *Id*. 56:19-57:15, 64:10-20.  The only difference between the two positions is that Level 1 drivers do not require a CDL driver's license whereas Level 2 drivers do. *Id*. 26:2-10, 34:2-10.

Defendant admits that the activities that RSRs were expected to be "qualified" to perform are, in fact, the duties RSRs' primarily performed. *Id*. 85:22-86:5; Exs. C, D, E; Gordon Decl. ¶¶ 12-13, 22. Specifically, RSRs drove trucks full of merchandise throughout their shifts, they physically carried items that weighed up to 45 pounds and they typically walked more than 10,000 steps while servicing their routes. *Id*. ¶¶ 14-16; Ex. A, Tr. 50:8-22, 53:14-54:2, 106:21-107:4; Exs. C, D, E. Not surprisingly, Defendant further admits that RSRs are physically active throughout their workday and are expected to be moving and not sedentary during that time. Ex. A, Tr. 51:8-54:2; 86:12-18.

In another job description, for DSD RSRs, BTB outlined additional abilities RSRs must have in order to perform their duties, namely:

- Ability to lift and carry an average of 300+ product units per day, each weighing up to 45 pounds, using product handling tools as appropriate, with or without a reasonable accommodation

- Ability to climb in and out of a commercial vehicle on average 30-40 times per day
- Ability to alternately sit, stand, push, pull and walk all day, with or without a reasonable accommodation

Ex. E.

Defendant admits that DSDs perform the exact same duties as Level 1 and Level 2 drivers with the only difference being that their pay structures are different than Level 1 and Level 2 drivers. Ex. A, Tr. 34:2-35:6, 62:13-63:18, 85:22-86:5; Gordon Decl. ¶¶ 17-22.  Here too it is true

that the abilities BTB expected RSRs to have as outlined in these "qualifications," were in fact the duties that the RSRs performed during their shifts. RSRs lift and carry an average of 300+ product units per day, each weighing up to 45 pounds, they climbed in and out of a commercial vehicle on average 30-40 times per day, and they are required to sit, stand, push, pull and walk all day. *Id.*; Ex. E.

RSR Training Mentors, Relief Specialists, and Retail drivers are essentially subcategories of Non-CDL Level 1 or CDL Level 2 drivers. Ex. A, Tr. 62:13-63:18.  The different titles these positions are provided pertain to specific responsibilities that are assigned to drivers in addition to their primary Level 1 or Level 2 delivery driver duties. *Id.* 82:10-83:15.  For example, Training Mentors are Level 1 or Level 2 drivers who train new hires when the need arises while at the same time performing their standard driver duties. *Id.* 35:14-24.  Thus, on the occasions that a Training Mentor is tasked with training a new driver, the Training Mentor simply performs their standard Level 1 or Level 2 driving duties together with the new hire whereby the new hire merely shadows the Training Mentor to see how they perform their duties. *Id.* 36:7-17.  Similarly, Relief RSRs are drivers who are able to run coverage for other RSRs who are not able to work due to being sick, on vacation or otherwise. *Id.* 23:17-22. While Relief RSRs may assist with dispatching duties prior to going out to service their route and may help with some closeout activities once they are back from making their deliveries, they service an entire delivery route just like any other Level 1 or Level 2 driver. *Id.* 93:3-13.  Finally, Retail RSRs are simply level 1 or Level 2 RSRs who deliver to retail customers of BTB such as large supermarkets. *Id.* 41:8-17.  As with the Level 1 and Level 2 job descriptions, Defendant admits that it maintains uniform job profiles for Training Mentor and Relief Specialists RSRs. *Id.* 35:14-24, 56:19-57:15, 64:10-20, 82:10-15, 106:21-107:4.[4]

---

[4]  Defendant's Fed. R. Civ. P. Rule 30(b)(6) witness testified that she had not seen a job profile for the Retail RSR position. The reason for that seems obvious as Retail RSRs are simply CDL Level 2 RSRs who deliver to a specific

## 2.  DSDs and Commission RSRs

Defendant admits that DSDs and Commission RSRs perform the exact same duties as Level 1 and Level 2 drivers with the only difference being that their pay structures are different than Level 1 and Level 2 drivers. *Id*. 34:2-35:6, 62:13-63:18; Gordon Decl. ¶¶ 17-22. To be sure, as with Level 1 and Level 2 drivers, DSDs and Commission RSRs all drove trucks filled with merchandise, unloaded and loaded the trucks, carried an average of 300+ items each day and had to climb in and out of a commercial vehicle on average 30-50 times per day. Ex. E; Ex. A, Tr. 34:2-35:6, 62:13-63:18; Gordon Decl. ¶¶ 17-22. While BTB offers both DSDs and Commission RSRs an opportunity to earn commissions, DSDs and Commission RSRs have different commission structures and they focus on different types of customers.  Ex. A, Tr. 38:17-21.

DSDs and Commission RSRs sign "commission pay plans" with BTB each year. While the commission plan may vary from year to year, each of the two positions DSDs and Commission RSRs sign the exact same commission pay plan as the others in employed in their respective position in a given year. Ex. A, Tr. 103:2-8.  From Defendant's records of RSRs employed during the limitations period, it appears that roughly 87 of the 128 Commission RSRs previously worked for Defendant in other Level 1 or Level 2 positions and, similarly, roughly 13 of the 23 DSDs previously worked for Defendant in other Level 1 or Level 2 positions. Ex. B.[5]

---

type of customer. Other than making deliveries primarily to retail establishments, they are otherwise no different than Level 2 CDL drivers who deliver to all types of customers.

[5]  With respect to the overarching issue in this litigation, *i.e.*, whether Defendant was permitted to pay RSRs bi-weekly, Plaintiff does not believe there is any difference between RSRs who had the opportunity to earn commissions and those who did not.  However, in conversations with Defendant's counsel in this case, it seems that they believe that employees who earn commissions are not covered by NYLL § 191(1)(a).  Accordingly, in an abundance of caution, Plaintiff seeks to certify two subclasses, one of drivers who could earn commissions and the other of drivers who could not.

**B.  Defendant Failed to Pay Class Members On a Weekly Basis and They Are Entitled to Liquidated Damages**

Defendant concedes that it paid Plaintiff, and all of the putative Class Members, only once every two weeks. Ex. A, Tr. 98:18-20.  This is a plain and simple violation of NYLL § 191(a)(1), which requires employers to pay "manual workers" once a week. N.Y. Lab. Law § 191(a)(1).  As such, Plaintiff, and the putative Class Members are entitled to liquidated damages and reasonable attorneys' fees and costs under NYLL § 198(1-a). *See Vega v. CM & Assoc. Constr. Mgmt., LLC*, 175 A.D. 1144, 1145 (1st Dept. 2019) (holding that the plain language of the statute allows plaintiffs to recovery liquidated damages and attorneys' fees for violations of NYLL § 191). Importantly, Plaintiff and the putative Class are entitled to recover liquidated damages in "instances where [the Defendant] violate[d] the frequency requirements of section 191(1)(a) but [paid] all wages due before the commencement of the action." *Id.*; *see also Caul v. Petco Animal Supplies, Inc.*, Case No. 20-cv-3534, 2021 U.S. Dist. LEXIS 184652, at *6-7 (E.D.N.Y. Sept. 27, 2021) (noting that "every court in this Circuit to consider [the issue] appears to have followed [the] construction of the New York Labor Law" that provides an employee with a right of action to obtain liquidated damages for late wages under NYLL § 191); *Gillett v. Zara USA, Inc*., 2022 U.S. Dist. LEXIS 143434, at *31 (S.D.N.Y. Aug. 10, 2022); *Mabe v. Wal-Mart Assocs., Inc.*, No. 1:20-cv-00591, 2021 U.S. Dist. LEXIS 50954, 2021 WL 1062566, at *5 (N.D.N.Y. Mar. 18, 2021); *Sorto v. Diversified Maint. Sys., LLC*, No. 20-CV-1302(JS)(SIL), 2020 U.S. Dist. LEXIS 242856, 2020 WL 7693108, at *2-3 (E.D.N.Y. Dec. 28, 2020); *Duverny v. Hercules Medical P.C.*, No. 18cv07652 (DLC), 2020 U.S. Dist. LEXIS 37547, 2020 WL 1033048, at *5-6 (S.D.N.Y. Mar. 3, 2020); *Scott v. Whole Foods Mkt. Grp., Inc.*, No. 18-CV-0086 (SJF) (AKT), 2020 U.S. Dist. LEXIS 255455, 2020 WL 9814095, at *3 (E.D.N.Y. Feb. 5, 2020). Therefore, Plaintiff, and the

putative Class Members, are entitled to recover liquidated damages on their NYLL 191(a) claims for Defendant's failure to pay timely wages.

### III.    ARGUMENT

#### A.  Plaintiff Satisfies The Requirements For Class Certification Under Fed. R. Civ. P. 23

Rule 23 provides that certification is appropriate where, as here, a plaintiff satisfies the four requirements of Rule 23(a) and one of the three prerequisites of Rule 23(b). *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc*., 546 F.3d 196, 201-02 (2d Cir. 2008).  "On a motion to certify a class, the court accepts all allegations in the pleadings as true." Aponte v. Comprehensive Health Mgmt., No. 10 Civ. 4825 (PKC), 2011 U.S. Dist. LEXIS 60882, at *25 (S.D.N.Y. June 1, 2011) (*citing Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2006 U.S. Dist. LEXIS 74039, at *27 (S.D.N.Y. Sept. 29, 2006). While the Court must resolve factual disputes relevant to satisfying each Rule 23 requirement, "[t]he certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, and any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court." *Vargas v. Howard*, 324 F.R.D. 319, 324 (S.D.N.Y. 2018) (quoting *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015)).  "In sum, the Court's task at the Rule 23 stage is not to resolve the liability question, but to decide 'whether the constituent issues that bear on [Defendants'] ultimate liability are *provable in common.*'" *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012) (*quoting Myers v. Hertz Corp*., 624 F.3d 537, 549 (2d Cir. 2010)) (emphasis in original).

The party seeking class certification bears the burden of satisfying the requirements of Rule 23 by a preponderance of the evidence. *Teamsters Local 445*, 546 F.3d at 202.  Nevertheless, "[t]he Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive

11

construction." *Vargas*, 324 F.R.D. at 324 (citations omitted). Consequently, "it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Id.* (citations omitted). Here because the parties have essentially stipulated to all the necessary facts for class certification, this Court should grant Plaintiff's motion.

### B. Plaintiff Satisfies the Requirements of Rule 23(a)

In order to meet their burden under Rule 23(a), Plaintiff must show that:

(1) The class is so numerous that joinder of all members is impracticable;
(2) There are questions of law or fact common to the class;
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

### i.   Numerosity – Rule 23(a)(1)

Under Rule 23(a)(1), numerosity is presumed where a putative class has 40 or more members. *Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234, 252 (2d Cir. 2011) (citation omitted). Defendant produced a list of more than 900 individual RSRs and Defendant's Fed. R. Civ. P. 30(b)(6) witness testified that there are approximately 300 RSRs currently working in New York State in the proposed class positions. Ex. B; Ex. A, Tr. 87:3-89:4. As there are at least 900 putative Class Members, numerosity is easily satisfied.

### ii.  Commonality – Rule 23(a)(2)

Rule 23(a)(2) requires that a common question of fact or law is capable of "generat[ing] common *answers* apt to drive the resolution of the litigation." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162 (S.D.N.Y. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). Put another way, commonality requires a "common contention" that will "resolve an issue central to the validity of each one of the claims in one stroke." *Id*. (internal citations omitted).

12

"Even a single common legal or factual question will suffice." *Id. (*quoting *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. 2006)).

"In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323 (ALC)(AJP), 2013 U.S. Dist. LEXIS 36357, at *62 (S.D.N.Y. Mar. 15, 2013), *report and recommendation adopted by* 2013 U.S. Dist. LEXIS 80587, (S.D.N.Y. June 7, 2013) (quoting *Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-3765, 2012 U.S. Dist. LEXIS 46408 (E.D.N.Y. Apr. 2, 2012)). "[F]actual differences among the claims of the class members will not defeat certification." *Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001); *Iglesias-Mendoza v. La Belle Farm, Inc*., 239 F.R.D. 363, 371 (S.D.N.Y. 2007) ("Once a common question is identified, differences among the questions raised by individual members [of the class] will not defeat commonality."); *Ansoumana v. Gristede's Operating Corp*., 201 F.R.D. 81, 86 (S.D.N.Y. May 24, 2001) (ruling that differences in the amount of hours worked by collective members and the amount of pay the employees received do not defeat certification because "[i]t is well-established that individual questions with respect to damages will not defeat certification") (internal quotation omitted); *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 181 (W.D.N.Y. 2005) ("The claim by each individual need not be identical, however, but there must exist common questions of fact or law.").

Here, Defendant admits that it had a common policy and practice with respect to all RSRs in that RSRs' primary job duties are the duties outlined in the job descriptions for Level 1 and Level 2 drivers. Gordon Decl. 7-22.  BTB promulgated "job descriptions" for both the Level 1 and Level 2 positions which layout the qualifications for the positions and are identical between the positions. Exs. C, D, E; Ex. A, Tr. 44:8-24, 49:17-50:18, 56:19-57:15, 64:10-20, 63:19-64:9;

85:22-86:5; 106:21-107:4.  At a more granular level, Defendant admits that each RSR within a subcategory of the RSR job title (*i.e.*, Retail RSR, Relief RSR, etc.) has essentially the same job functions as the other RSRs in the same job category. *Id*. 41:18-42:20.  Most significantly, there is no dispute that all RSRs delivery drivers' primary duties are to drive trucks, load and unload the trucks, and physically deliver merchandise to BTB customers. Gordon Decl. ¶ 12; Ex. A, Tr. 56:10-57:15; 85:22-86:5.  Moreover, Defendant admits that, until March 2022, it paid all the potential Class Members during the class period "on a bi-weekly basis." *Id*. 98:18-20. Plaintiff has provided extensive evidence of the job duties of the covered positions in the Putative Class which includes a declarations from the named defendant, who worked in both a non-commissioned and commissioned role for BTB, *see generally* Gordon Decl., testimony from Defendant BTB's Fed. R. Civ. P. 30(b)(6) witness, *see* Nussbaum Decl. ¶ 3, Ex. A, and BTB's own job descriptions, *see* Nussbaum Decl. Exs. C, D, E.

The record evidence leaves no doubt that there are common questions of fact and law that will generate common answers. Specifically, the central (and possibly only) question of fact or law in this case is whether the job duties associated with each job title (or role) within the proposed class required the employee to direct more than 25% of their working time to manual labor. This question is the core issue in this case and would be the core issue in any case brought by any class member for the same claims. *See Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) (finding commonality satisfied when "class members [could] assert the same legal claim…against [defendant's] policy that was in all material respects nearly identical for each Plaintiff"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (concluding that whether or not an exemption applied to a class was a common issue despite defendant's assertion that an individualized inquiry would be necessary). Because of the record evidence noted above, this

14

question necessarily generates a common answer that would drive the resolution of the litigation. If each job required more than 25% of an employee's time dedicated to manual labor, then the employee is a "manual worker," and Defendant was required to pay them on a weekly basis. Thus, by answering this question Plaintiff can show that Defendant caused the same injury to all Class Members by unlawfully failing to pay them on a weekly basis as required by N.Y. Lab. L. § 191.

If liability is established, Class Members' individual damages may be calculated mechanically by reviewing payroll records. But, in any event, "[t]he fact that the amount of damages class members can recover – if any – may differ does not bear weight in the commonality inquiry." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 70 (S.D.N.Y. 2018). Accordingly, Plaintiff has established that commonality is satisfied.

### iii.   Typicality – Rule 23(a)(3)

Typicality "is satisfied when each class member's claim arises from the same course of events, meaning each class member makes similar legal arguments to prove the defendant's liability." *Vargas*, 324 F.R.D. at 326 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) and citing to *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "A plaintiff's claims are typical of the class members' claims where the plaintiff's and the class members' 'injuries derive from a unitary course of conduct by a single system." *Spicer*, 269 F.R.D. at 337 (S.D.N.Y. 2010) (*quoting Marisol A.*, 126 F.3d at 377). However, "minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *see also Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 199 (S.D.N.Y. 2011) ("[D]ifferences among the Plaintiffs as to […] the amount of pay they received

concern the amount of damages to which any individual Plaintiff might be entitled, but do not defeat typicality for Rule 23 purposes.") (citations and internal quotation marks omitted).

Rather, the claims of the class representatives and the class "only need to share the same essential characteristics and need not be identical." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (citation omitted); *see also Zivkovic*, 329 F.R.D. at 70 ("Plaintiff's claim and the class claims must be so interrelated that the interests of the class members will be fairly and adequately protected in their absence, though they need not be identical for typicality to be satisfied.") (internal quotation marks omitted); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100, 106 (E.D.N.Y. 2011) (stating that "[e]ven if some class members' facts are somewhat different than [the named plaintiffs] the claims are similar enough to meet the typicality element," because all class members "were subject to the same general employment scheme" and "their claims are all based on the same course of events and legal theory") (citations omitted); *Spicer*, 269 F.R.D. at 337 ("[T]ypicality does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.") (*quoting Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999).

In this case, Plaintiff Gordon's job duties easily qualify him as a "manual worker" under the NYLL. Gordon Decl. ¶¶ 10-13. Specifically, Gordon drove a truck, loaded and unloaded merchandise and physically carried and delivered merchandise to Defendant's customers. this is what all other RSRs primarily did as well. *Id*.  Thus, to analyze Plaintiff Gordon's claims for untimely payment of wages, the Court will need to determine whether at least 25% of his job duties (*i.e.*, physically loading and unloading his vehicle, delivering merchandise; and driving for many

16

hours) constituted physical labor. Gordon Decl. ¶¶ ¶¶ 10-16; *see Beh v. Cmty. Care Companions*, No. 19-CV-1417-JLS-HBS, 2021 U.S. Dist. LEXIS 197316, *7-9 (W.D.N.Y. Feb. 1, 2021). This analysis would be typical, if not identical, to an analysis of the claims of each individual Class Member. Because all Class Members were subject to the same employment policies and because they had the same primary job duties, typicality is easily satisfied. *See, e.g.*, *Zivkovic*, 329 F.R.D. at 71; *Velez v. 111 Atlas Rest. Corp.*, No. 14 CV 6956, 2016 U.S. Dist. LEXIS 107230, *69 (E.D.N.Y. Aug. 11, 2016); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 204 (S.D.N.Y. 2006).

### iv.   Adequacy – Rule 23(a)(4)

The final requirement of Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Where the "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member," the adequacy requirements are met. *Shahriar*, 659 F.3d at 253. Here, Plaintiff Gordon is prepared to act as class representative, has no conflict with any Class Members, and will fairly and adequately protect the interests of the Class. Gordon Decl. ¶¶ 25-27.  Additionally, since Plaintiff Gordon was subject to the same common policies and practices as all other members of the Class, the same legal arguments and strategies are applicable to vindicate their claims. *See Spicer*, 269 F.R.D. at 337 ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.") (citation omitted).

### v.   Rule 23(A)'s implied ascertainability requirement

Although it is "not explicitly spelled out in Rule 23, courts have added an 'implied requirement of ascertainability' with respect to the class definition." Hamelin v. Faxton-St. Luke's Healthcare, 274 F.R.D. 385, 393 (N.D.N.Y. 2011). Specifically, courts have required that "a class

be identifiable before it may be properly certified." *Id*. at 396 (*citing Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 135 (S.D.N.Y. 2003)). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Schear v. Food Scope Amer., Inc.*, 297 F.R.D. 114, 125 (S.D.N.Y. 2014)(quotation omitted).   Here, the proposed Class Members are easily identifiable from Defendant's records: it is comprised of all RSRs who worked for BTB in New York State during the Class Period.

### C.  Class Certification Under Rule 23(b)(3) Is Appropriate

"In addition to satisfying the Rule 23(a) prerequisites, a class proponent must qualify the proposed class under one of the three subsection 23(b) categories." *Brown v. Kelly,* 609 F.3d 467, 476 (2d Cir. 2010)*.* Rule 23(b)(3), the provision that Plaintiff moves under here, is appropriate in cases in which common legal or factual issues predominate over individual issues and where a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3)).

### i.    Common questions of law and fact predominate

Predominance is satisfied under Rule 23(b)(3) "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re US Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (internal quotation marks omitted).

Courts routinely find that common questions predominate in wage and hour actions brought on behalf of a class of employees of the same employer challenging allegedly illegal policies and practices. *See e.g., Shahriar* 659 F.3d at 253 (holding that common questions predominate over individual issues because "[i]f Plaintiffs succeed in showing that the [covered positions] were not eligible to receive tips under New York law, then each of the class plaintiffs

will likely prevail on his or her section 196-d claims, [even though] class plaintiffs' individualized damages will vary"); *Damassia*, 250 F.R.D. at 160 (predominance satisfied where "there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies […] despite arguments about individualized differences in job responsibilities"); *Zivkovic*, 329 F.R.D. at 75; *Enea v. Bloomberg, L.P.*, No. 12 Civ. 4656, 2014 WL 1044027, at *6-7 (S.D.N.Y. Mar. 17, 2014); *Velez*, 2016 U.S. Dist. LEXIS 107230, at *71-72; *Schear*, 297 F.R.D. at 125-26; *Spicer*, 269 F.R.D. at 338. Here, the common questions identified *supra,* namely whether the job duties that RSRs performed constitutes manual labor (*i.e.*, was more than 25% of their working time), will determine Defendant's liability with respect to the entire class. Accordingly, common questions predominate.

### ii.    A class action is superior to other methods of adjudication

Class certification will permit the resolution of at least 900 individual claims in a single forum, at one time, thereby avoiding a multiplicity of repetitive lawsuits. When plaintiffs are "aggrieved by a single policy of the defendant," a class action is ideal as many nearly identical legal and factual issues can be adjudicated in unison. *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 146 (2d Cir. 2001).

Courts routinely find superiority satisfied where, as here, it is unlikely that class members would bring individual actions on their own behalf because the costs of individual litigation would likely outweigh their recovery. *See*, *e.g.*, *Zivkovic*, 329 F.R.D. at 76 (superiority satisfied where "[i]t is unlikely that the class members would engage in individual action because the amount of potential recovery is low and likely to be outweighed by the individual cost of litigation"); *Schear*, 297 F.R.D. at 125 ("Courts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the

expense and burden of individual litigation, and many potential class members are currently employed by the defendants."); *Torres,* 2006 U.S. Dist. LEXIS 74039, at \*53 (class action is superior to other methods where the amount of recovery was small in relation to litigation costs). Without certification, a large number of individuals will lose any practical means for obtaining damages stemming from Defendant's illegal conduct.

In addition, opt-out classes are commonly granted where, as here, some class members currently work for the defendant and "the concern for possible employer reprisal action exists and renders the alternative of individual joinder less than practicable." *Trinidad v. Breakaway Courier Sys.*, No. 05 Civ. 4116 (RWS), 2007 U.S. Dist. LEXIS 2914, at \*26 (S.D.N.Y. Jan. 12, 2007) (internal quotation omitted); *see also*, *e.g.*, *Schear*, 297 F.R.D at 126; *Torres*, 2006 U.S. Dist. LEXIS 74039, at \*53-54. Since the proposed class action will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results," a class action is the superior method of resolving the claims of the Class.  *Myers*, 624 F.3d at 547.

### D.  Plaintiff's Counsel Should be Appointed as Class Counsel

Prior to appointing class counsel, Rule 23(g) directs the Court to consider:

(i)     the work counsel has done in identifying or investigating potential
        claims in the action;
(ii)    counsel's experience in handling class actions, other complex
        litigation, and the types of claims asserted in the action;
(iii)   counsel's knowledge of the applicable law; and
(iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g). *See also Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 346 (S.D.N.Y. 2004); *Niemiec v. Ann Bendick Realty*, No. 04 Civ. 897 (ENV), 2007 U.S. Dist. LEXIS 98840, at \*38-39 (E.D.N.Y. Mar. 30, 2007), *adopted by*, 2007 U.S. Dist. LEXIS 97531 (E.D.N.Y. Apr. 23, 2007).

Plaintiff has retained an experienced employment law firm – Joseph and Kirschenbaum LLP ("JK").  Counsel has extensive experience, and this Court has previously found that JK "is qualified and experienced in wage and hour class actions." *Argudo,* 2019 U.S. Dist. LEXIS 163249 *16 (appointing JK class counsel); *see also*, *e.g.*, *Shahriar*, 659 F.3d 234 (affirming district court's certification of Rule 23 class of restaurant servers with JK as class counsel); *Murphy v. Lajaunie*, No. 13 CV 6503, 2015 U.S. Dist. LEXIS 97531 (S.D.N.Y. July 24, 2015) (same); *Megason*, 2014 U.S. Dist. LEXIS 3910 (same); *Capsolas v. Pasta Resources, Inc.*, No. 10 Civ. 5595, 2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) (granting final approval of settlement in wage and hour class action brought against a restaurant where JK was co-class counsel); *In re Milos Litig.*, No. 08 Civ. 6666, 2011 U.S. Dist. LEXIS 138473 (S.D.N.Y. Sept. 8, 2011) (same); *Spicer*, 269 F.R.D. 321 (certifying class and appointing JK class counsel). *See also* Nussbaum Decl. ¶¶ 8-16. Further, Plaintiff's counsel has zealously prosecuted this action and identified the potential claims and has sufficient financial resources to represent the class. *Id*. ¶ 17. The Rule 23(g) requirements are satisfied by the appointment of Plaintiff's counsel as class counsel.

### E.  The Proposed Notices Satisfies The Requirements Of Rule 23(C)(2)(B)

Attached as Exhibit F to the Nussbaum Declaration is Plaintiff's proposed class notice, which satisfies all the requirements of Rule 23(c)(2)(B).[6]

---

[6] Rule 23(c)(2)(B) requires that notice to a Rule 23(b)(3) class state, "in plain, easily understood language:

| | |
|---|---|
| (i) | the nature of the action; |
| (ii) | the definition of the class certified; |
| (iii) | the class claims, issues, or defenses; |
| (iv) | that a class member may enter an appearance through an attorney if the member so desires; |
| (v) | that the court will exclude from the class any member who requests exclusion; |
| (vi) | the time and manner for requesting exclusion; and |
| (vii) | the binding effect of a class judgment on members under Rule 23(c)(3)." |

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court (1) certify the NYLL claims in this case as a class action in two subclasses of non-commissioned and commissioned RSRs; (2) appoint Plaintiff's counsel as class counsel; (3) appoint Philip Gordon as class representative; (4) Order Defendant to produce to Plaintiff a list, in Microsoft Excel spreadsheet format, of all RSRs employed by BTB in New York State from November 11, 2015 to the present, including each employee's name, last known address, all known telephone numbers, all known email addresses, dates of employment, and job title(s), within ten days of the Court's Order; and (5) authorize the mailing of the proposed notice to all Class Members.

Dated: New York, NY
        October 9, 2022

By:    *s/ Josef Nussbaum*
D. Maimon Kirschenbaum
Josef Nussbaum
**JOSEPH & KIRSCHENBAUM LLP**
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640 Phone
(212) 981-9587 Fax

*Attorneys for Plaintiff and the proposed Class*